**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles Stephen MARTIN, Defendant–Appellant.**

No. 93–3384.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1994.

Decided June 9, 1994.

Omar F. Greene, II, Little Rock, AR, argued, for appellant.

Linda B. Lipe, Little Rock, AR, argued, for appellee.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

LOKEN, Circuit Judge.

After entering a conditional plea of guilty, Charles Stephen Martin was convicted of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Because of his prior drug convictions, he was sentenced as an armed career criminal to 188 months in prison. On appeal, Martin argues that the district court[1] erred in denying his motions to suppress because he was arrested without probable cause and his incriminating post-arrest statements were involuntary. We affirm.

## I.

On October 3, 1992, 73–year–old Felix Dunagun was robbed of his wallet at gun point in front of his sign shop in Russellville, Arkansas. Dunagun described his assailant as a brown-haired, white male in his late twenties, five feet ten inches tall, 170 pounds, and "clean cut." The stolen wallet contained five dollars and several blank checks. The next day, a Russellville businessman told police that he had seen a van idling near the scene of the robbery and provided the van's license plate number. Police also learned that a white male had cashed two of the stolen checks at local convenience stores. A store clerk reported that the culprit was driving a van of the same description.

Police determined from the license number that the van was registered to Martin and his wife. Martin's wife told police that Martin was in possession of the van and she had not seen him or the vehicle for three weeks. The police showed photographs of Martin and others to Dunagun and the store clerks. They could neither identify Martin as the perpetrator nor eliminate him as a suspect.

Four days after the robbery, the police found Martin with his van and arrested him. At the police station, Martin was taken to an interrogation room where two Russellville officers read him *Miranda* warnings from a written form. Martin signed the form and agreed to answer questions. He immediately admitted cashing the stolen checks but de-

1. The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas.

nied committing the robbery, first claiming that an acquaintance borrowed his van and then gave him the checks, and later suggesting that his brother may have been the robber. After thirty minutes of questioning, Martin admitted to the robbery, disclosed that the firearm was under the van's passenger seat, and consented to a search of the vehicle. He also repeated his confession on an eight-minute audio tape and signed a form consenting to a search of the van. The police then searched the van and found a .22 caliber handgun.

After his indictment, Martin moved to suppress his confession and the handgun, arguing (1) that both were the fruits of an unlawful arrest, and (2) that his post-arrest statements were involuntary because he was under the influence of drugs and the police interrogators had exploited his impaired condition. At the suppression hearing, the government played portions of Martin's taped confession into the record. Martin testified that he ingested methamphetamine a few hours before his arrest and had not slept for ten or eleven days, nor eaten for two or three days, prior to the questioning. His sister testified that Martin was nervous and upset, as if under the influence of drugs, when she visited him at the jailhouse on the night following his arrest. The arresting and interrogating officers testified that Martin did not appear to be under the influence of drugs.

Martin further testified that, before his confession, a Pope County deputy sheriff entered the interrogation room while Martin was alone, grabbed him by the hair, shoved his head against the wall, and told him that he would "see [Martin] burn in hell" if he did not "come clean." The deputy sheriff did not attend the suppression hearing. The Russellville officers who conducted the questioning admitted that the deputy was at the police station at the time of the questioning and could have spent a few minutes alone with Martin when they were out of the interrogation room.

After the hearing, the magistrate judge[2] recommended that suppression be denied, concluding that there was probable cause for Martin's arrest and that the testimony of Martin and his sister regarding his condition at the time he confessed "is simply not consistent with what the Court heard on tape." The district court adopted this recommendation. Martin argues on appeal, as he did to the district court, that he was arrested without probable cause, that his statements and the handgun are fruit of this poisoned tree, and that his confession and consent to search of the van were, in any event, involuntary.

**II.**

Martin's warrantless arrest was supported by probable cause if the officers' knowledge was "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). We review the district court's finding that probable cause supported Martin's arrest under the clearly erroneous standard. *See United States v. Archer,* 840 F.2d 567, 574 (8th Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 364, 102 L.Ed.2d 354 (1988).

At the time of Martin's arrest, the police knew that he matched the victim's description of the robber's height, weight, race, and hair color. They knew that Martin's van was seen idling unattended near the crime scene and that a similar van was later driven by the person who cashed a stolen check. Martin's wife told police that he had been in exclusive possession of the van for three weeks. The district court concluded that these circumstances provided probable cause to arrest Martin when the police found him still in possession of the van four days after the robbery. We agree. *Compare United States v. Johnson,* 741 F.2d 1338, 1340 n. 2 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

---

2. The HONORABLE HENRY L. JONES, JR., United States Magistrate Judge for the Eastern District of Arkansas.

Martin argues that a number of circumstances negate this probable cause—Dunagun's description of the robber was too vague; Martin's appearance, particularly his ponytail hair style, is inconsistent with Dunagun's characterization of the robber as "clean cut"; and Dunagun and the two store clerks failed to identify Martin from a photograph lineup.

Dunagun's physical description of the robber was quite general and could certainly fit many people in the Russellville area. However, the fact that Martin fit a general description that in isolation would have been insufficient to justify his arrest does not negate probable cause. When combined with the other information suggesting that he had committed the crime, it is a relevant factor that supports the district court's probable cause determination. *See United States v. Pinion*, 800 F.2d 976, 979 (9th Cir.1986), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

The fact that Martin was wearing his hair in a ponytail when arrested likewise does not negate the officers' probable cause. Dunagan, the victim, described Martin as "clean cut." Martin argues that a person of Dunagun's age would not consider a ponytail "clean cut"—a generational bias that we do not embrace. A ponytail pulled back behind the head is a feature that a robbery victim might well overlook. Indeed, at the suppression hearing, two of the arresting officers did not remember whether Martin's hair was long, and a third did not recall that he had a ponytail. Thus, even if Martin's ponytail did not fit Dunagun's description of the robber, the variance was insubstantial, like the difference between California and New Jersey license plates in *United States v. Thompson*, 906 F.2d 1292, 1296 & n. 8 (8th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990).

Finally, Martin argues that the police lacked probable cause because Dunagun and the two store clerks failed to identify him from a photograph spread. However, the police officer who showed them the spread testified that crime victims and busy store clerks are often unable to make positive identifications from photographs. This factor does not offset the information linking Martin's van to the crime, and Martin to the van, that was the basis for the decision to arrest. Looking at all the information known by the police at the time of arrest, we conclude that the district court's finding of probable cause is not clearly erroneous.

## III.

■ Martin argues that his confession and consent to search the van were involuntary because his will was overborne by coercive police conduct and the effects of his drug use. A confession or a consent to a search is voluntary unless, "in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir.1989). We review the ultimate question of voluntariness *de novo* but uphold the district court's findings unless clearly erroneous. *See United States v. Bordeaux*, 980 F.2d 534, 538 (8th Cir.1992).

■ Martin was not subjected to lengthy interrogation. He confessed to the robbery and consented to the search after thirty minutes of questioning. The entire interrogation, including the making of an audio tape, took less than an hour. At the time of the questioning, Martin had been given *Miranda* warnings and was twenty-nine years old with an extensive criminal record and a family, factors suggesting an ability to resist pressure to confess. *See United States v. Watson*, 423 U.S. 411, 424–25 & n. 14, 96 S.Ct. 820, 828–29 & n. 14, 46 L.Ed.2d 598 (1976); *United States v. McClinton*, 982 F.2d 278, 283 (8th Cir.1992).

Although Martin claimed that he had ingested methamphetamine shortly before his questioning, the interrogating officers testified that he did not appear to be under the influence of drugs. After listening to a portion of Martin's taped statement, the magistrate judge could "detect no difference at all in either his voice or his pattern of speech" from Martin's testimony at the suppression hearing. The magistrate therefore rejected Martin's testimony that his will was readily overborne because of drug abuse, a credibility finding that is "virtually unreviewable on

appeal." *United States v. Candie,* 974 F.2d 61, 64 (8th Cir.1992).

Martin also testified that he was physically abused by a county deputy sheriff when the Russellville police interrogators were out of the room, and that he confessed out of fear the deputy would otherwise return. This accusation was absent from Martin's otherwise extensive motion papers. It initially surfaced at the suppression hearing, when the deputy sheriff was not present to deny the accusation. Martin had lied to the police about the likely identity of the robber twice during his questioning, and his testimony at the suppression hearing that he was drug impaired was not credible. In these circumstances, we uphold the district court's determination that the deputy sheriff's alleged physical abuse, if it occurred at all, did not taint Martin's subsequent taped confession to the Russellville police.

After carefully reviewing the suppression hearing transcript, we conclude that the district court's findings are not clearly erroneous and that its determination that Martin's confession and consent to search were voluntary should be upheld.

For the foregoing reasons, Martin's motions to suppress were properly denied. The judgment of the district court is affirmed.