UNITED STATES of America, Appellee,

v.

Leroy HEATH, Appellant.

No. 94–3100.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1994.

Decided July 3, 1995.

Virginia Villa, Federal Public Defender, Minneapolis, MN, argued, for appellant.

James Lackner, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.

SHAW, District Judge.

Leroy Heath entered a conditional guilty plea to one count of aiding and abetting possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2, and was sentenced by the district court[1] to a 120-month term of imprisonment followed by a five year term of supervised release. Heath now appeals the district court's denial of his motion to suppress evidence and statements. We affirm.

## I. BACKGROUND

Heath was arrested for possession with intent to distribute crack cocaine on September 3, 1993. He was indicted by a federal grand jury on September 21, 1993. Heath filed a motion to suppress evidence and statements arising from entry into, and search of, his motel room by Hennepin County Sheriff's Deputies. Three hearings were held on the motion to suppress.[2] Hennepin County Sheriff's Deputies Christopher Omodt and Chester Cooper testified at all three hearings, while Heath testified only at the last hearing.

*The Deputies' Testimony.* On September 3, 1993, Omodt received information from a confidential informant that an African-American male staying in Room 114 at the Econo Lodge Motel in Minneapolis, Minnesota, was

---

* The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. The hearings were held before the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota, on October 20, 1993, November 24, 1993, and February 16, 1994.

involved in drug trafficking. Omodt contacted Cooper to assist in the investigation.

When Cooper arrived at the motel, Omodt and Deputy Sheriff Erickson were speaking with a motel employee, who said the man renting Room 114 had presented an Indiana driver's license with the name "Otis McDuffey" and registered under the same name. The man paid for the room with cash each day and extended his stay day by day. Another person had been paying cash for the numerous telephone calls made from the room.

The deputies decided to attempt a "knock and talk."[3] There was no answer when the deputies knocked on the room door, so they returned to their cars. The deputies met with others and decided to conduct a surveillance of the motel. When Omodt observed a car pull into the parking lot near Room 114 and two African–American males exit the car, one carrying a shoe box, he and Cooper decided to try another "knock and talk" at Room 114.

When the deputies arrived at the room and knocked, the door was opened a crack. Heath answered the door and identified himself as "Otis McDuffey." The deputies identified themselves as law enforcement officers. Omodt told Heath that he was aware of possible drug activity in Room 114 and asked if the deputies could come into the room. According to Omodt, Heath opened the door all the way and said, "Come on in."

Mark Wynn[4] was also present in the room, sitting in a chair near a bed. Omodt told Heath and Wynn that they did not have to speak with the deputies or consent to any searches, and that they were free to tell the deputies to leave at any time. Wynn nodded affirmatively; Heath replied that they did not have anything to hide and would speak with the deputies. Once again, Omodt told Wynn and Heath that he and Cooper were deputy sheriffs. Cooper reiterated the same warnings Omodt had given to Heath and Wynn earlier.

Cooper noticed Wynn attempt to slide a shoe box under a bed. Omodt asked if he could look inside the shoe box. Heath said the new shoes he was wearing came in the box, and consented to the search. Omodt opened the shoe box and found a substance the officers believed to be crack cocaine, rubber bands, packaging materials, a scale, a razor blade, and a quantity of United States currency.

At this point, Heath and Wynn were arrested and handcuffed. Three other deputies who had been standing in the hallway entered the room. After a pat-down search, Omodt took Wynn and Heath into the bathroom and informed each of his *Miranda* rights. Each stated he understood his rights and was willing to talk to Omodt.

Omodt made no threats or promises to either Heath or Wynn. Cooper was outside the partially open bathroom door. Although he did not hear the entire exchange between Omodt and Heath, Cooper heard the *Miranda* warnings and Heath's subsequent waiver. Omodt asked Heath for consent to search the motel room. Heath gave oral consent to do so. Heath also signed a Hennepin County Sheriff's Department Consent to Search Form.[5] After Heath signed the form, Cooper and the other deputies searched the room.

While searching the room, Cooper found two bags. In one of the bags, a pair of shorts was found which contained a quantity of United States currency. During a second pat-down search, more crack cocaine was discovered in Wynn's shirt pocket.

*Heath's Testimony.* Heath's version of events is much different. Heath testified at the hearing on February 16, 1994, as follows. When Heath and Wynn returned to the motel on September 3, 1993, Heath did not carry a shoe box with him. When the deputies knocked on his room door, Heath stuck his head out to inquire who was at the door, and Omodt asked if he was "Otis." Heath replied that he was "Otis." Omodt asked if he was the occupant of the room and Heath responded affirmatively. Then, the deputies identified themselves as law enforcement officers.

---

3. Cooper testified that a "knock and talk" is a casual conversation between the deputies and the target of an investigation, with no show of force.

4. Mark Wynn is not a party to this appeal.

5. Heath signed the name "Otis McDuffey" on the form, but Cooper testified he witnessed Heath sign the form.

Omodt asked Heath what was in the shoe box, and Heath replied that the box was empty. Omodt told Heath that he had reason to believe someone was selling narcotics from the room, and Heath asked how Omodt had made such a determination. Omodt replied that a lot of phone calls had been made from the room, and he had "probable cause" to believe drugs were being sold from the room. Heath asked if a large number of calls constituted "probable cause" and Omodt answered "Yes." Cooper told Heath the deputies wanted to go home to their wives, it was near the holiday weekend, and they were tired. Cooper stated they needed to check things out and report to their boss that everything was all right. At this point, Omodt's voice turned harsh and he told Heath "[i]f you don't let me in I am going to get a f. . . . . . search warrant and tear your room apart." Heath then let go of the door and pulled back his head. Because of the way Omodt was acting, Heath feared Omodt would grab him. Then Omodt pushed open the door, and he and Cooper entered the room.

Once in the room, the deputies did not tell Heath he had a right to refuse their entry, to refuse to talk to them, or to refuse consent to a search. Omodt presented Heath with a piece of paper that he demanded Heath sign. Omodt told Heath that the paper said the deputies could search his room, but Heath was not allowed to read the paper. Heath did not know he could tell the officers to leave. Heath testified that in Jamaica, where he grew up, it was not a good idea to resist police officers and it was best to comply with their demands. Heath signed the consent form using the name "Otis McDuffey."

Omodt again asked what was in the shoe box. Heath said nothing, and Omodt opened the box. Then Heath and Wynn were placed under arrest. Cooper called for other deputies to enter the room. A report came across a deputy's radio that a African–American male had just pulled up in a black Cadillac. Omodt asked if Heath knew who this was and threatened to make a report to the judge if Heath did not cooperate. Cooper then stated that the deputies would protect themselves if the man came into the room, but he did not know if they would be able to protect Heath and Wynn.

*The Deputies' Rebuttal Testimony.* Deputies Omodt and Cooper testified in rebuttal to Heath's testimony. Omodt and Cooper testified consistently with their prior testimony, and contradicted Heath's testimony that they used coercive tactics to gain entry to the motel room· and search it and the shoe box without Heath's consent. The deputies testified that (i) they did not use the phrase "probable cause" during their initial encounter with Heath; (ii) Heath gave them oral and written consent to enter the room and search it and the shoe box; (iii) Heath was advised of his rights at least twice; (iv) Heath was not threatened; and (v) they did not threaten to decline protection of Heath and Wynn from a third party. Both deputies expressly denied that Omodt said "[i]f you don't let me in I will get a f. . . . . . search warrant and tear your room apart."

*District Court's Findings.* The district court adopted the Magistrate Judge's finding discrediting Heath's testimony and crediting that of the deputies. Based upon those credibility findings, the district court concluded that Heath voluntarily consented to the deputies' entry into the motel room and to the search of it and the shoe box. Accordingly, the district court denied Heath's motion to suppress.

The district court discredited Heath's testimony because (i) he lied to the deputies about his identity; (ii) it was incredible that "Heath would challenge Omodt's claim that he had probable cause to believe drugs were being sold there prior to the sheriffs' entry into the room, but then become too timid to ask questions or resist signing a document he knew to be a consent to search form"; and (iii) while Heath testified that he did not carry the shoe box with him from the car on September 3, 1993, and asserted the shoe box had been in the motel room since September 1, 1993, he also testified that one of the first questions Omodt asked when Heath opened the door only enough to stick his head out was about the shoe box.

## II. DISCUSSION

Heath argues the district court erred in finding that he voluntarily consented to the deputies' entrance into the motel room and to

their subsequent search of it and the shoe box. Heath contends that the district court's credibility determination, on which its finding of consent to search is based, is erroneous and not supported by the record. .

The determination is erroneous, Heath argues, because the deputies' testimony was incredible and inconsistent. Heath contends it would be incredible that he would willingly agree to let the police search the shoe box when he knew crack cocaine was inside. In support of his argument, Heath cites his testimony regarding the coercive tactics used by Omodt to gain entry to the room. We note, however, that Heath does not cite any evidence other than his testimony to challenge the deputies' version of events.

Heath also notes that he has an eleventh-grade education and is a foreign national, and argues that the entire nature of the deputies' confrontation with him had an inherently coercive effect.

Heath further argues that the determination is not supported by the record because the facts on the record are unclear as to whether he knew why the deputies were knocking on the room door, whether he voluntarily consented to their entrance into the room, whether he consented to the search that followed, and whether the search was conducted prior to or after he signed the consent to search form.

The government contends that the only issue before this court is the credibility determination of the district court, which the government asserts is virtually unreviewable on appeal. In the alternative, the government argues that the search of the motel room was a valid search incident to arrest.

### A. Credibility Determination

We must affirm the district court's denial of the motion to suppress "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we] are left with the definite and firm conviction that a mistake has been made."

*United States v. Lowe,* 50 F.3d 604, 607 (8th Cir.1995) (quoting *United States v. Layne,* 973 F.2d 1417, 1420 (8th Cir.1992), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993)).

■ A district court's determination as to the credibility of a witness is virtually unreviewable on appeal. *United States ·v. Martin,* 28 F.3d 742, 745–46 (8th Cir.1994) (*Martin*) (citing *United States v. Candie,* 974 F.2d 61, 64 (8th Cir.1992)). The assessment of a witness's credibility is the province of the trial court. *See United States v. Rosa,* 11 F.3d 315, 329 (2d Cir.1993) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). A district court's decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575–76, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985).

■ We have considered the district court's credibility determination and, applying the deferential standard for reviewing such a determination, conclude that clear error was not committed. The district court was faced with two different versions of the events and chose to credit the deputies' version. There was no extrinsic evidence to contradict the deputies' story other than Heath's own testimony. Further, while the deputies might have made some inconsistent statements, their stories were not so internally inconsistent or implausible that a reasonable fact-finder would not credit their testimony. *See id.; Martin,* 28 F.3d at 745–46.

### B. Consent to Enter and Search

■ A search based upon an individual's consent may be undertaken by law enforcement agents without a warrant or probable cause, and any evidence discovered during the search may be seized and admitted at trial. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (*Schneckloth*). To justify a consensual search, the prosecution has the burden of proving that an individual voluntarily consented to the search. *United States v. Severe,* 29 F.3d 444, 446 (8th Cir.1994) (*Severe*) (citing *United States v. Larson,* 978 F.2d 1021, 1023 (8th Cir.1992)). The prosecution need not prove that the individual was

fully aware of his or her rights under the Fourth Amendment in order to establish a voluntary consent. *Schneckloth,* 412 U.S. at 235, 93 S.Ct. at 2051–52. The totality of the circumstances must be considered by the court to determine whether consent was given voluntarily and without coercion. *Severe,* 29 F.3d at 446; *United States v. Barahona,* 990 F.2d 412, 417 (8th Cir.1993) (citing *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2048). Consent may be inferred through words, actions or conduct of the individual subject to the search. *United States v. Gleason,* 25 F.3d 605, 607 (8th Cir.), *cert. denied,* ─── U.S. ───, 115 S.Ct. 283, 130 L.Ed.2d 199 (1994).

 The question of whether consent to search is present is an issue of fact that requires consideration of the totality of the circumstances. *Severe,* 29 F.3d at 446 (citing *United States v. Cortez,* 935 F.2d 135, 142 (8th Cir.1991), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992)); *see Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2048. A district court's finding of consent to search is reviewed under the clearly erroneous standard. *Id.*

 Examining the totality of the circumstances, we conclude the district court's determination that Heath voluntarily consented to the deputies' entry into the room and their search of the room and the shoe box was not clearly erroneous. *See Martin,* 28 F.3d at 745. The deputies testified that prior to their entry into the room, Heath was told they were investigating possible drug activity; he was advised of his *Miranda* rights at least twice; he was not threatened; and he gave the deputies oral permission to enter the room, search it and the shoe box. Heath concedes he signed the consent form after Omodt told him it would permit the deputies to search the room. Moreover, the deputies testified Heath signed the consent to search form without threats or coercion.

### III. CONCLUSION

For the foregoing reasons, we are not left with the definite and firm conviction that a mistake was made by the district court in its finding of consent to search. Therefore, we conclude Heath's motion to suppress was properly denied. We need not reach the government's alternative argument that the search of the motel room was a valid search incident to arrest.

Accordingly, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, concurring specially.

I concur only because it is not the province of the appeals court to make credibility assessments. The police officers' saccharine account of the events of September 3, 1993, ironically leaves a bitter aftertaste. Rarely, if ever, have I encountered a case in which the police conduct was so mild-mannered and the suspect so acquiescent. The "fact" that Heath would so willingly consent to the search of his motel room and, more specifically, the shoe box, which he knew contained drugs and drug paraphernalia, is surprising, to say the least.