# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1547

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael Leon Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 9, 2003

Filed: October 3, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Michael Williams, a felon who conditionally pled guilty to possessing firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), appeals the district court's[1] denial of his motion to suppress evidence, alleging the government discovered the evidence while conducting an illegal search of his temporary dwelling. We affirm.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

# I

On the night of August 24, 2001, Officers Thomas Francis and Shane Kearns of the Springfield, Missouri, Police Department came knocking at suite 504 of the Drury Inn Motel. They had received information that a suspect might be there with Mr. Williams and that Mr. Williams might have an outstanding warrant for his arrest. After the hotel clerk told them the suite was registered to Mary Williams, appellant's wife, the officers came to her door. We have conflicting accounts of what happened then.

According to Mrs. Williams and her children, the officers entered the suite without consent. Mrs. Williams's two sons testified the officers pounded on the door and threatened to enter forcibly. Fifteen-year-old Rachel testified she answered the door and asked the officers to wait for her mother, who was asleep in another room. Rachel then turned away from the door, leaving it half-way open. When she looked back, she noticed Officer Francis had entered 12 to 18 inches into room. As Mrs. Williams came to the door, she too noticed Officer Francis was already inside, now three to five feet from the door frame. Both Mrs. Williams and Rachel testified the officers entered the room entirely when Mrs. Williams opened the door further.

In contrast, the officers described their interaction with Mrs. Williams and her children as routine and polite. Though the officers could hear sounds of people inside and no one came to the door for some time, the officers never banged on the door or shouted. When Mrs. Williams finally answered the door, Francis, the lead officer, asked if they could come inside. She responded by opening the door further and stepping back to make way for them. Officer Francis recalled she also uttered "okay" or some word to the same effect. At no time did Mrs. Williams or anyone else inside the suite tell the officers they could not enter.

The ensuing events were undisputed. Once inside, the officers were able to see through an open door into a separate room, where they observed Mr. Williams, lying asleep. When he awoke, he acknowledged a possible traffic warrant. Officer Francis ran a warrant check through police dispatch and received an affirmative response. At this point, the officers did not arrest him. Instead, Officer Francis requested a confirmation of the warrant and asked Mr. Williams if they could search the suite. He declined. When the confirmation came, the officers arrested him, and incident to that arrest, searched the area within his armspan, finding the firearms which were the basis for his conviction.

Mr. Williams moved to suppress this evidence on the grounds the officers made a warrantless entry into the suite without his wife's consent. At the evidentiary hearing, the magistrate judge heard the two accounts we have outlined above, and finding the officers's version more credible, denied the motion. The district court adopted the magistrate judge's report and recommendations. We now affirm.

II

Whether or not Mrs. Williams gave consent is a question of fact. We review a trial court's conclusions on questions of fact for clear error only. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). Thus, we will reverse for clear error if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake. See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

We start our analysis with some observations about the Fourth Amendment right of the people to be secure from unreasonable searches and seizures. U.S. CONST. amend. IV. Generally, to search a private place, person, or effect, law enforcement must obtain from a judicial officer a search warrant supported by probable cause. Katz v. United States, 389 U.S. 347, 357 (1967). This protection

extends to temporary dwellings, such as motel rooms. <u>United States v. Conner</u>, 127 F.3d 663, 666 (8th Cir. 1997).

Where a person having authority over the premises voluntarily consents to a search, however, law enforcement may conduct a warrantless search without running afoul of the Fourth Amendment. <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974); <u>Schneckloth v. Bustamante</u>, 412 U.S. 218, 222 (1973). Further, consent reasonably implied from behavior suffices to trigger the exception. <u>See, e.g.</u>, <u>United States v. Mendoza-Cepeda</u>, 250 F.3d 626, 627-629 (8th Cir. 2001) (finding law enforcement reasonably viewed the defendant's gestures as consent to a search); <u>Jones</u>, 254 F.3d at 695.

We now turn to whether Mrs. Williams consented to the search. To survive a motion to suppress under the consent exception, the government must prove by a preponderance of the evidence that Mrs. Williams gave voluntary consent under the totality of the circumstances. <u>See</u> <u>United States v. Severe</u>, 29 F.3d 444, 446 (8th Cir. 1994). The magistrate heard the conflicting accounts. On the one hand, the officers testified Mrs. Williams opened the door wide and stepped aside, gestures they interpreted as consent. The lead officer added he asked Mrs. Williams for permission to enter and she gave it by uttering "okay" or some similar word. On the other hand, Mrs. Williams's sons testified the officers pounded the door and threatened to enter by force. If true, this evidence could refute the government's contention that Mrs. Williams voluntarily consented. In any event, Mrs. Williams and Rachel both testified Officer Francis had already entered the room by the time Mrs. Williams came out of the bedroom and both officers entered the room entirely when she opened the door further to speak with them.

Facing these two plausible but conflicting accounts, the district court essentially had to decide whom to believe, and it decided to believe the officers. In other words, the district court found that the government had shown by a

preponderance of the evidence that Mrs. Williams consented to the search. We now review this finding for clear error, the applicable standard.

A district court's decision to credit one testimony over another can almost never be clear error. United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995). Then, clear error only lies where there is extrinsic evidence contradicting the credited testimony or where the testimony is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. Id. Otherwise, a district court's credibility determination is virtually unreviewable on appeal. Id.

In the district court's view, the family's testimony sounded rehearsed and not credible. Because the officers's testimony was internally consistent and plausible and there was no other extrinsic evidence to contradict it, the district court did not commit clear error when it credited the government's account over the family's, finding that Mrs. Williams consented to the search. Consequently, we affirm the district court's denial of the appellant's motion.

_____