# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3709

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Reagan Abott Shallal, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: June 18, 2004
Filed:   June 6, 2005

_____

Before BYE, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Reagan Shallal appeals from the sentence of 63 months' imprisonment imposed on him after he pleaded guilty to conspiracy to distribute and to possess over 100 kilograms of marijuana with intent to distribute it. Shallal contends that the district court[1] erred in adjusting his offense level upward by three levels to account for Shallal's aggravated role in the offense. We affirm the sentence imposed.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

The government's only witness at the sentencing hearing was Josh Lahaye, who had acted as a confidential informant. Lahaye testified that Shallal recruited him to transport marijuana, first from San Diego to Michigan, then on three trips from San Diego to Iowa. Shallal gave Lahaye directions on where to deliver the drugs in Detroit. The first trip to Michigan involved the participation of a man named "Sal," whom Shallal introduced to Lahaye. Lahaye also mentioned the participation of two Mexican men in the Michigan trip.

Lahaye said that on his three trips to Iowa, Shallal gave him instructions on where to deliver the marijuana and kept in touch with Lahaye during the trip to keep track of his progress. Shallal introduced Lahaye to a man named Troy Henkel, who assisted Lahaye in unloading the marijuana in Iowa. Two other men (Abe and someone Lahaye didn't know) were involved in dividing the marijuana and counting the money. Abe and the other man would give Lahaye money to take back to San Diego; the amounts varied from $15,000 to $30,000. Once in San Diego, Lahaye would divide the money according to orders from Shallal; Lahaye would take his share and give the rest of the money to Shallal and sometimes Shallal's cousin. Lahaye made about $5,000 per trip. Lahaye testified that Shallal and Rod Marcos were partners in the marijuana business and that Rod's role was to get the drugs from Mexico.

After the trip to Michigan and the first trip to Iowa, Lahaye was apprehended in possession of $14,000 in cash, which was seized. After that, beginning on July 16, 2002, Lahaye began to cooperate with the government. The government promised Lahaye that as long as he told the truth and "helped out as much as possible," he would not be charged. Lahaye testified that he received cash payments and expense reimbursements from the government, as well as a payment of $13,500 shortly before the sentencing in this case. On cross examination, Shallal's counsel exposed various self-contradictions in Lahaye's previous statements and testimony about who

delivered the marijuana to him for the Michigan trip, how Lahaye was paid, and how much of the money seized belonged to Shallal.

Shallal testified that it was Lahaye who first raised the subject of drug smuggling and that the two of them were equally involved.

The district court found that Shallal was a manager or supervisor of at least one other individual in the conspiracy. The court found that Shallal recruited Lahaye, introduced him to the other participants, monitored his progress on the road, and gave Lahaye directions on where to deliver the marijuana. The district court further found that Shallal directed Lahaye on how to divide the proceeds. The court held that the aggravating role guideline only required that Shallal supervise one other person if the conspiracy was extensive. Sentencing Transcript at 103 (citing United States v. Zimmer, 299 F.3d 710 (8th Cir. 2002)). The court found there were five or more participants in the conspiracy, specifically naming Shallal, Lahaye, Henkel, Marcos, Sal, Abe, and several others. Accordingly, the court assessed a three-level upward enhancement for aggravated role in the offense.

Because Shallal was a manager or supervisor, he was not eligible to receive the safety valve adjustment under U.S.S.G. § 5C1.2. He did, however, receive a three-level downward adjustment for acceptance of responsibility. The resulting sentencing range was 63-78 months. The district court sentenced Shallal to 63 months' imprisonment, remarking that this was "the very lowest guideline sentence that I can give."

We review de novo the district court's application of the guidelines to the facts, and we review the district court's findings of fact for clear error. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005).

There was no error in the district court's conclusion that Shallal should receive the three-level aggravating role adjustment under U.S.S.G. § 3B1.1(b). To qualify for the enhancement, the defendant need only supervise one person in an extensive conspiracy. See United States v. Garrison, 168 F.3d 1089, 1096 (8th Cir. 1999). There was direct evidence supporting the district court's determination that Shallal acted as supervisor of Lahaye in the marijuana venture. There was evidence that Shallal recruited Lahaye, gave him directions, monitored his progress, and introduced him to other conspirators. There was also evidence that Shallal took a greater proportion of the proceeds than Lahaye's $5,000 cut. There was abundant evidence, including an admission recited in the plea agreement, that the venture involved five or more participants. The reasons to doubt Lahaye's credibility were well-exposed by cross examination, so the district court was able to weigh these reasons in deciding whether to believe Lahaye. We have no warrant for disturbing the district court's credibility determinations. See United States v. Martin, 28 F.3d 742, 745-46 (8th Cir. 1994) (credibility finding "virtually unreviewable on appeal").

Less than a week after this case was submitted, the Supreme Court handed down its decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Within a few days, Shallal sought to amend his brief to include a Blakely argument. While we held the case in anticipation of further clarification of Blakely, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005). Under Booker, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. In order to avoid violation of this Sixth Amendment right, the Supreme Court excised key provisions of the Sentencing Reform Act of 1984, with the result that the United States Sentencing Guidelines are no longer to be viewed as mandatory, but as advisory only. Id. at 764.

Shallal was sentenced on the basis of a fact-based sentencing enhancement that was not tried to a jury. Shallal did not raise this objection in the district court. Therefore, we must consider whether the district court's application of the enhancement and its application of the guidelines themselves as mandatory, rather than advisory, constitute plain error. In order to conclude that the district court's use of the guidelines in sentencing constituted plain error, we would have to determine that there is a reasonable probability that Shallal would have received a more favorable sentence but for the error. United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005) (en banc).

We find no evidence in the record that the district court would have sentenced more leniently but for the Booker error. The district court did sentence Shallal at the lowest level available under the guidelines, but Pirani held that this alone does not show a reasonable probability that the court would have imposed a more lenient sentence had it known it could do so. Id. at 553. Accordingly, the district court's application of the guidelines to Shallal's case was not plain error.

We affirm the sentence imposed.

_____