# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2783

_____

United States of America

*Plaintiff - Appellee*

v.

Rocky Thomas Mayfield

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: December 16, 2016
Filed: January 27, 2017
[Unpublished]

_____

Before KELLY and MURPHY, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

PER CURIAM.

Rocky Thomas Mayfield was convicted by a jury of conspiracy to distribute and possess with intent to distribute methamphetamine, two counts of possession with

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

intent to distribute methamphetamine, and one count of being a felon in possession of a firearm. The district court[2] sentenced Mayfield to 240 months on each of the drug charges and 120 months on the firearm conviction, all sentences to run concurrent. Mayfield appeals, arguing the district court erred when it denied his motion to suppress evidence seized as a result of a vehicle search and a search of a hotel room. Finding no error, we affirm.

## I. Background

In February 2015, Rocky Mayfield was riding in a car in Berthold, North Dakota, in the middle of the day. The car caught the attention of Officer Allen Schmidt, the Chief of Police of the Berthold Police Department, because it did not have a front license plate. As Officer Schmidt followed the car, he noticed that the vehicle also had no rear license plate and saw the car cross the center dividing line. Based on these infractions, Officer Schmidt initiated a traffic stop.[3]

The driver of the car was Tina Ganley. Oscar Delgado was seated in the front passenger seat, and Mayfield was seated in the back passenger seat. Officer Schmidt testified at a hearing on Mayfield's motion to suppress that he noticed Mayfield "moving around furtively in the backseat" as Schmidt approached the car. Officer Schmidt testified that when he reached the driver's side window and bent down to talk to Ganley, he "immediately noticed an odor of marijuana coming from the vehicle." Due to the smell of marijuana and his observation that Ganley was unusually nervous and had dilated pupils, Officer Schmidt—who had been trained in

---

[2]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

[3]Mayfield does not challenge the validity of the initial stop. See United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) ("[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator.").

narcotics detection—suspected Ganley was under the influence of drugs. He retrieved identification from each person in the car and checked for outstanding warrants. He found none.

Officer Schmidt returned to the car and removed Ganley, who became verbally aggressive and agitated, bolstering Officer Schmidt's belief that she may be under the influence of narcotics. While speaking to Ganley at the rear of the vehicle, Officer Schmidt noticed Mayfield, still in the back passenger seat, "was bending down towards the floor and moving around quite a lot," which made Officer Schmidt suspicious and concerned for his safety. Officer Schmidt removed both men from the vehicle and performed an over-the-clothes pat-down on each. Upon detecting "very large bulges" in Mayfield's pockets, Officer Schmidt discovered approximately $19,000 in cash on Mayfield's person. Officer Schmidt then placed both Mayfield and Delgado in the back seat of his squad car. Though he determined that it was too cold and windy to allow Ganley to remain outside, Officer Schmidt had no further space in his squad car. He therefore ensured that Ganley had no weapons on her person, conducted a quick search of the car she had been driving, and placed her in its back seat. Officer Schmidt read Ganley her Miranda rights and proceeded to search the vehicle with Ganley sitting in the back seat. During this search, Officer Schmidt discovered approximately one pound of what was later determined to be methamphetamine, packaged in multiple bags. Officer Schmidt arrested all three of the vehicle's occupants. Ganley, Delgado, and Mayfield were transported to the jail, where Delgado was interviewed by Task Force Officer Jace Gaulke.

At the suppression hearing, Officer Schmidt testified that he smelled the odor of marijuana as soon as he leaned down to talk with Ganley, and that when Ganley was in the back seat of the car, she said "marijuana was consumed right before they got in the vehicle." Delgado also testified at the suppression hearing[4] that he had

_____

[4]Delgado's testimony at the suppression hearing differed from his trial testimony with respect to the details of precisely when and where he smoked the marijuana and what clothing he was wearing when he did so.

smoked marijuana before getting in the car that morning. Testimony at the suppression hearing established that neither Delgado nor Ganley told Officer Schmidt that anyone had smoked marijuana inside the vehicle on the morning the group was stopped. Officer Gaulke also testified at the hearing, and he said he did not smell marijuana on Delgado during the interview at the jail. However, Delgado did tell Officer Gaulke that there were ten pounds of methamphetamine and a small amount of marijuana at a nearby Days Inn Hotel. Officers obtained a search warrant for the indicated hotel room. Upon executing the warrant, officers discovered methamphetamine, marijuana, drug paraphernalia, and a firearm.

Mayfield moved to suppress the evidence obtained as a result of the vehicle search and the search of the hotel room. Mayfield argued that, while the initial traffic stop was valid, Officer Schmidt lacked probable cause to search the vehicle because Officer Schmidt's testimony that he smelled marijuana was not credible. The district court denied Mayfield's motion to suppress, finding Officer Schmidt's testimony regarding his concerns for his safety and his detection of the odor of marijuana sufficient to support probable cause to search the vehicle.

## II. Discussion

In reviewing the denial of a motion to suppress, we review legal conclusions de novo and factual findings for clear error. United States v. Zamora-Lopez, 685 F.3d 787, 789 (8th Cir. 2012). We "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (quoting United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006)).

The parties agree that the odor of marijuana emanating from a vehicle provides probable cause to search the vehicle pursuant to the automobile exception to the

Fourth Amendment's prohibition of warrantless searches and seizures. See, e.g., United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) ("[T]he smell of marijuana gave the deputy probable cause to search Peltier's truck for drugs."); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (noting officer's experience in drug and alcohol detection in finding officer had probable cause to search the defendant's vehicle for an open container based on the defendant's breath and demeanor). Officer Schmidt testified that he smelled marijuana emanating from the vehicle. Therefore, the determination as to whether Officer Schmidt had probable cause to search the vehicle turns on whether the district court erred in finding Officer Schmidt's testimony credible.

"The assessment of a witness's credibility is the province of the trial court." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995). "The district court's findings regarding witness credibility 'are entitled to particularly great deference,' and [typically] are 'virtually unreviewable on appeal.'" United States v. Wright, 739 F.3d 1160, 1166–67 (8th Cir. 2014) (internal citations omitted). Mayfield argues this is the unusual case of error, asserting Schmidt's testimony is not credible because he gave conflicting statements regarding the circumstances surrounding the traffic stop and because extrinsic evidence contradicts Schmidt's testimony. See Heath, 58 F.3d at 1275 (explaining that a district court's determination that a witness's testimony is credible "can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it").

Mayfield highlights several inconsistencies between Officer Schmidt's testimony and other statements and reports he made about the case. In particular, Mayfield argues that Officer Schmidt's testimony with respect to when he called for back up conflicted with a statement he gave reporters a day or so after the stop. Mayfield also asserts that Officer Schmidt's explanations as to why he failed to confiscate Delgaldo's and Mayfield's cellular phones before putting them in the

squad car and failed to perform any sobriety tests on Ganley are sufficiently questionable to render his testimony generally unreliable. Mayfield is also of the view that Schmidt's actions during the traffic stop do not comport with his purported fear for his safety. As for extrinsic contradictory evidence, Mayfield points to the fact that Officer Gaulke did not smell marijuana on Delgado during the interview. He asserts that Gaulke's inability to smell marijuana during the interview—in confined closed quarters—indicates that Officer Schmidt could not have smelled marijuana in the cold open air on a windy day.

Yet Officer Schmidt testified that he immediately smelled marijuana when he bent down to speak with Ganley, meaning that Officer Schmidt was very close to the open window of the vehicle at the time he detected the odor of marijuana. And Ganley told Schmidt that "marijuana was consumed" earlier in the day. Moreover, Schmidt's testimony regarding the odor of marijuana is supported, not contradicted, by Delgado's admission that he had smoked marijuana that morning and the fact that marijuana was found in the hotel room where Delgado said it would be. The district court recognized some discrepancies in Officer Schmidt's testimony, but found those discrepancies did not affect whether Schmidt credibly testified that he smelled marijuana emanating from the car, which Mayfield concedes is sufficient to support a finding of probable cause. We treat the district court's determination that Officer Schmidt was credible with "particularly great deference," Wright, 739 F.3d at 1166–67 (internal quotation omitted), and find that this determination was not so clearly erroneous or contrary to external evidence that a reasonable fact-finder would not credit it.

The judgment of the district court is affirmed.

_____