# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-1908

_____

United States of America

*Plaintiff - Appellee*

v.

Nicholas Jacob Harper

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 12, 2015
Filed: May 29, 2015
[Published]

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Pursuant to a conditional plea agreement in which he preserved his right to appeal a suppression issue, Defendant Nicholas Jacob Harper pleaded guilty to one count of Receipt of Images of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). He received a sentence of 121 months' imprisonment, 20

years' supervised release, and a $20,000 fine.  He now appeals the suppression issue.  In addition, he asserts a plain-error challenge to the fine.  We affirm.

I.

Officers obtained a warrant to search a home in Arkansas where an identifiable internet connection and computer had been used to receive child pornography.  Upon executing the warrant, officers did not discover the computer being sought.  Officers, however, discovered that a wireless network for the home was unsecure and could be accessed from neighboring homes.

While on the property being searched, officers observed Harper leaving a neighboring home in a pick-up truck bearing Oklahoma license plates.  Officers knew the computer being sought had been used in the vicinity of Owassa, Oklahoma, to download images of child pornography.  Officers ran the plates and discovered Harper had an outstanding warrant for contempt.

Officers also approached the home Harper had exited and talked to a woman at that home.  The woman, Harper's girlfriend, stated she and Harper had recently moved to Arkansas from Owassa.  Later, Harper returned to the neighborhood but did not return to the street where the officers were congregated.  Rather, he drove up and down a nearby street.

Officers eventually located Harper parked in a grassy area where they approached him.  The parties generally do not dispute what happened next—officers arrested him, searched his truck, and discovered a computer and a thumb drive in a backpack located in a truck-bed toolbox.  Later, at the police station, officers gave Harper a <u>Miranda</u>[1] warning, and he signed a consent form to allow officers to search

---

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

the computer and thumb drive. Harper initially denied downloading images of child pornography, but after officers discovered images, Harper admitted he had downloaded the images.

Harper moved to suppress the materials found in the truck. The parties dispute whether an officer, Detective Monson, asked for consent before searching the truck's cab or toolbox. They also dispute whether Harper provided consent to these searches. In this regard, Detective Monson testified at a suppression hearing that he asked Harper for consent before searching the cab and again before searching the toolbox. Detective Monson also testified that Harper gave consent both times and that he told Harper, both times, that Harper was not required to consent. Detective Monson explained that he did not obtain written consent because he rode in another officer's vehicle and therefore did not have the forms he normally would have carried in his own car.

Other officers could neither confirm nor deny that Detective Monson asked for or obtained consent. Detective Monson testified that at least one of the other officers had been standing in close proximity when he asked Harper for consent. That officer, however, could not recall whether Detective Monson asked for consent. Harper testified that he did not consent to the searches and that Detective Monson did not ask for consent.

A magistrate judge[2] issued a detailed report recommending denial of the motion, finding Detective Monson credible, and holding Harper provided consent. Harper filed objections, and the district court[3] issued an order addressing the

[2]The Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas.

[3]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

objections, adopting the report and recommendation, and denying the motion. Harper then entered into a conditional plea agreement and pleaded guilty, preserving the suppression issue for appeal.

At sentencing, the district court[4] gave a downward variance from a guidelines range of 151–180 months' imprisonment and imposed a sentence of 121 months. The court also imposed a substantial term of supervised release and a $20,000 fine. The statutory maximum for the fine was $250,000, and the guidelines range was $17,500–$175,000.

The court addressed at length concerns with the sentencing guidelines for child pornography offenses. In particular, the court discussed with counsel the difficulty of dealing with requests for variances and the application of enhancements when many enhancements in child pornography cases have become the norm (high number of images, use of computer, etc.) and when many defendants present similar factual backgrounds and personal histories. The court addressed the 18 U.S.C. § 3553(a) factors in two ways—implicitly through these extended discussions and explicitly when highlighting the factors. Finally, in fashioning the overall sentence, the court discussed the need to use all of the tools at its disposal—incarceration, supervised release, and the fine—to arrive at an appropriate sentence.

The court did not expressly discuss the details of Harper's ability to pay, but the court expressed a clear and comprehensive understanding of the record showing careful study prior to sentencing—a different judge had handled the case through the acceptance of the conditional plea. As a part of the record, the presentence investigation report shows Harper had few assets and a negative net worth. The report states Harper graduated high school, attended four semesters of college, earned

---

[4]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

good grades, and obtained a degree in Electrical Technology. The report also indicates Harper claimed to have "specialized training and skills as an electrical technician in data communications, in fiber optics and is CPR/AED certified. Also, he reports having professional licenses in welding, forklift/all lifts operation and bobcat operation." Finally, the report indicates he held employment related to the field of his education from 2007 through 2012, earning $16.50–$24 per hour except for brief stints when he worked lower paying jobs in retail settings. Harper did not object to these factual assertions.

When addressing the fine, the court stated:

There's also going to be a fairly substantial fine imposed, and I've taken into consideration the fact that you're going to be in prison for a long amount of time, you're not going to have a whole lot of income coming in. To the Court's knowledge based on what the Court has reviewed, you don't have a whole lot of assets from which to pay a fine. But you're going to be ordered—to the extent you can't pay the fine immediately, you're going to be ordered to make a payment. And while you're in prison, you're going to make—you know, if you have a job in prison or you incur earnings in prison, you're going to have to pay on that fine. And every time you see that fine deducted from your earnings, and when you're on a period of supervised release, continual payments are going to be required. And every month, Mr. Harper, when you make a payment on that fine, I want you to remember this day in court. I want you to remember the victimization that you have caused to the nameless victim in this case.[5]

---

[5]The district court also referenced a payment plan, recognizing Harper's present inability to pay the fine in full:

Any unpaid financial penalty shall be payable during the period of imprisonment in quarterly installments of $25 or 10 percent of the defendant's quarterly earnings, whichever is greater. The payment of any remaining balance shall be a condition of supervised release and

-5-

When the court announced the fine of $20,000 as a part of the overall sentence, Harper's counsel did not object. Harper now appeals the suppression issue and raises a plain-error challenge to the fine.

## II.

### A. Suppression Motion

We review the constitutionality of a search or seizure de novo but the underlying factual determinations only for clear error. United States v. Craig, 630 F.3d 717, 721 (8th Cir. 2011); United States v. Almeida-Perez, 549 F.3d 1162, 1170 (8th Cir. 2008) ("In the appeal from a suppression ruling, we review for clear error the questions of historical fact, such as who said what."). Credibility assessments are "the province of the trial court." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995). As such, the "decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." Id.

Harper attempts to attack the district court's determination under this exacting standard. He identifies several points that arguably detract from Detective Monson's credibility. First, Harper notes that no officers could corroborate Detective Monson's claim that he asked for and obtained consent from Harper. Harper also notes that one of the officers who could not corroborate Detective Monson's claim had been standing by Detective Monson and, necessarily, would have heard any request for

---

may be paid in monthly installments of $200 or 10 percent of the defendant's net monthly household income, whichever is greater, with the entire balance of the fine to be paid in full one month—or no later than one month prior to the end of the period of supervised release.

consent.  Finally, Harper notes that, even if Detective Monson arrived at the scene in a different officer's car, the lack of forms did not preclude Detective Monson from obtaining or memorializing consent on any available paper.

Harper is correct to the extent he argues any or all of these factors might have given the district court reason to believe Harper rather than Detective Monson.  None of them, however, create the internal inconsistency or implausibility necessary to compel the conclusion that Detective Monson was non-credible.  Further, Harper's arguments necessarily ask us to overlook the countervailing considerations that: his own claims also are uncorroborated; his claims are self-serving; and Detective Monson himself was the one who testified that the other officer was standing by him when he asked Harper for consent—an unlikely claim unless Detective Monson actually believed the other officer heard him obtain consent (or unless Detective Monson and the other officer were not only both non-credible but actually conspiring to conceal a lack of consent).

In the end, the district court could have chosen to believe either man, and after watching the men testify and listening to the other officers' testimony, the court believed Detective Monson.  We have reviewed the suppression hearing transcript and will not disturb this finding.  Consent is a valid exception to the warrant requirement, and an officer's credible report of verbal consent can suffice to meet the government's burden of establishing consent.  See United States v. Dupree, 202 F.3d 1046, 1049 (8th Cir. 2000) (finding consent based on officer testimony despite contradicting defendant testimony).

## B.  Fine

Harper concedes we review merely for plain error the fine imposed as a part of his sentence.  Harper argues he does not, and will not, have the ability to pay the fine. He also argues the district court did not address his ability to pay the fine or otherwise

discuss the applicable factors listed in 18 U.S.C. § 3572(a), U.S. Sentencing Guidelines Manual § 5E1.2, or U.S.S.G § 5E1.2 cmt. n.3.

Harper overstates the district court's burden to explain itself when imposing a near-the-bottom-of-the-Guidelines fine. First, although Harper's status as a convicted felon and sex offender will impede his ability to earn, he possesses training and skills that have allowed him to secure meaningful employment in the past. Second, the court in this instance demonstrated familiarity with the record and noted Harper's lack of assets and limited ability to earn while incarcerated. Third, the court supplied payment requirements for the terms of incarceration and supervised release. And fourth, the court explained the role of the fine as a part of the overall sentence—a sentence which included a substantial downward variance.

Against this backdrop, we note that the relevant Guideline provides the "court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). In other words, Harper bore the burden of proving his inability to pay a fine within the Guidelines range. United States v. Cornelison, 717 F.3d 623, 630 (8th Cir. 2013). He did not do so.

In any event, to show plain error, Harper must "show an error that is clear or obvious under current law, and he must demonstrate that the error affected his substantial rights and seriously affected the fairness, integrity, or reputation of the judicial proceedings." United States v. Hinkeldey, 626 F.3d 1010, 1012 (8th Cir. 2010) (describing United States v. Olano, 507 U.S. 725, 732–34 (1993)). Even if we believed the fine or the court's relatively short discussion of the factors supporting the fine amounted to a clear or obvious error, relief would remain unavailable.

Nothing about the fine viewed against this record affects the integrity or public reputation of judicial proceedings or otherwise suggests a lack of fairness. <u>See</u> <u>Cornelison</u>, 717 F.3d at 630 (rejecting a plain-error challenge to a fine).

We affirm the judgment of the district court.

_____