# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3260

_____

United States of America

*Plaintiff - Appellee*

v.

Dustin Allen Wolff

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 20, 2016
Filed: July 27, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Dustin Allen Wolff (Wolff) conditionally pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count one) and possession of an illegal firearm in violation of 26 U.S.C. §§ 5845(b), 5861(c), and 5871 (count two) after law enforcement officers seized three firearms and 374 rounds of ammunition from a shed owned by his father, Allen Wolff

(Allen). Wolff reserved the right to appeal the district court's[1] denial of his motion to suppress the evidence seized from the shed. On appeal, Wolff suggests the Fourth Amendment required the officers to obtain a warrant before entering and searching the shed. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On June 19, 2014, United States Probation Officer Jeff Frankeberger received information that Wolff, one of the convicted felons[2] Officer Frankeberger supervised, may have shot and mutilated a neighbor's cow near Wolff's home. The terms of Wolff's supervised release prohibited him from committing another "federal, state, or local crime" and from possessing drugs, alcohol, firearms, or any other dangerous weapons. Wolff also had to "submit his person, residence, workplace, vehicle, computer and/or possessions to a search conducted by a United States Probation Officer based upon evidence of a violation of a condition of supervision."

Suspecting Wolff might be in violation of the terms of his supervised release, Officers Frankeberger, Tim Howard, and Stacey Levingston went to Wolff's residence to conduct a probation search. Wolff lived in a mobile home on property owned by Allen. The seventy-five-acre property included two residences (Allen's and Wolff's), a large shop, and a smaller shed that was approximately ten yards from Wolff's residence. Allen undisputedly owned the shed.

When the officers arrived at the property, Officer Frankeberger stopped at the shop to talk with Allen. Officers Howard and Levingston continued down the road

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

[2]In 2011, Wolff was convicted in federal court of illegally possessing firearms and ammunition in violation of federal law. See 18 U.S.C. §§ 922(g)(1), 924(a)(2); 26 U.S.C. §§ 5861(c), 5871. On May 14, 2013, Wolff began serving a three-year term of supervised release.

in a separate vehicle toward Wolff's residence. Wolff met them on the road in his white Ford pickup. Wolff exited his pickup and walked with Officer Howard back to the shop. Officer Levingston searched the pickup and found a black case containing drug paraphernalia, a glass vial containing a crystalline substance, and possible blood stains in the pickup and on a seven-inch knife. When questioned about the items found in the truck, Wolff admitted he had been using methamphetamine. The officers also searched Wolff's residence and found more drug paraphernalia. The officers then contacted a local drug task force and the Dunn County (North Dakota) Sheriff's Office for assistance.

After the officers searched Wolff's trailer home and the surrounding grounds, their attention turned to the shed, which was locked with a padlock. Allen, who was up the hill working, told Officer Howard he owned the shed, but did not put the padlock on and did not have a key. Allen explained Wolff had some personal property in the shed, including a freezer. Officer Howard testified at a suppression hearing Allen gave permission to search the shed. Dunn County Sheriff's Deputy Ron McCloud likewise testified Allen gave the officers permission to "search any place you want," including his shed. Although Allen recalled telling Officer Howard that he did not put the padlock on the shed and that Wolff would have done so, Allen testified he did not give the officers permission to remove the padlock and did not recall speaking with Deputy McCloud.

Officers Frankeberger and Howard testified Wolff confirmed Allen owned the shed, and Wolff told the officers he had locked it. The officers further testified Wolff gave them permission to search the shed, however, he did not have a key. To solve that problem, Wolff not only told the officers where to find a pair of bolt cutters to remove the padlock, but he also cut the padlock off himself. With the padlock removed, the officers searched the shed and found three firearms, some ammunition, drug paraphernalia, a recipe for methamphetamine, and business cards with Wolff's name on them. The officers seized the contraband and arrested Wolff.

On September 17, 2014, a grand jury indicted Wolff for illegally possessing the firearms and ammunition found in the shed. Wolff moved to suppress the evidence seized from the shed, arguing the officers should have obtained a warrant before searching the shed.[3] Although Wolff—in his motion—denied giving consent to cut the padlock and search the shed, he did not testify at the suppression hearing.

On March 18, 2015, the district court denied Wolff's motion on multiple grounds, finding the warrantless search was a valid probation search, see, e.g., United States v. Knights, 534 U.S. 112, 121-22 (2001), and "the undisputed evidence at the evidentiary hearing clearly revealed" Allen and Wolff consented to the search of the shed, see, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). After the denial, Wolff conditionally pled guilty to counts one and two, and the district court sentenced him to concurrent terms of 77 months imprisonment on each count. In accordance with his plea, Wolff timely appealed on October 7, 2015.

II.     DISCUSSION

Wolff asserts the district court erred in denying his motion to suppress because, as he sees it, the officers should have obtained a warrant before searching the shed. "When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal question of whether the Fourth Amendment was violated de novo." United States v. Salamasina, 615 F.3d 925, 929 (8th Cir. 2010). "We affirm . . . unless the district court's decision 'is unsupported by substantial evidence [or is] based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" United States v. Wallace, 713 F.3d 422, 426 (8th Cir. 2013) (quoting United States v. Bay, 662 F.3d 1033, 1035 (8th Cir. 2011)).

---

[3]Wolff does not challenge the constitutionality of the probation searches of his vehicle and his home, instead focusing on the search of the shed and the incriminating evidence found inside.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. For a search to be reasonable, the government generally must obtain a warrant supported by probable cause before "physically intruding on constitutionally protected areas" or otherwise searching areas or items in which an individual has a reasonable expectation of privacy. Florida v. Jardines, 569 U.S. ___, ___, 133 S. Ct. 1409, 1417 (2013). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley v. California, 573 U.S. ___, ___, 134 S. Ct. 2473, 2482 (2014).

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth, 412 U.S. at 219; accord Fernandez v. California, 571 U.S. ___, ___, 134 S. Ct. 1126, 1132 (2014) ("It would be unreasonable—indeed, absurd—to require police officers to obtain a warrant when the sole owner or occupant of a house or apartment voluntarily consents to a search."). "Consent to search . . . may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the [area or] item to be searched." United States v. James, 353 F.3d 606, 613 (8th Cir. 2003). "[A]n officer's credible report of verbal consent can suffice to meet the government's burden of establishing consent" despite conflicting or contradictory evidence from the defense. United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) (per curiam).

In this case, the undisputed evidence adduced at the suppression hearing established that Allen owned the shed and that Wolff, who had some personal property inside, put a padlock on the shed. To meet its burden of establishing consent to search, the government presented testimony from three of the officers at the scene. Officer Howard and Deputy McCloud each testified Allen denied installing the padlock and verbally authorized the officers to search his shed. Officers Howard and Frankeberger testified Wolff not only consented to the search, but also helped the

officers locate a pair of bolt cutters to remove the padlock and then cut the padlock off himself—giving the officers access to conduct the search.

Forgoing his right to testify in support of his motion to suppress, see Simmons v. United States, 390 U.S. 377, 394 (1968) ("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."), Wolff did not contradict the officers' testimony that he gave consent. Allen—Wolff's only witness—denied giving the officers specific permission to remove Wolff's padlock and did not recall speaking with Deputy McCloud.

The district court, crediting the officers' testimony that Allen and Wolff both consented to the search, concluded the search did not violate Wolff's Fourth Amendment rights. In reaching that conclusion, the district court found each of the officers "to be credible, honest, and forthright." Those credibility determinations are "'virtually unassailable on appeal.'" United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007) (quoting United States v. Guel-Contreras, 468 F.3d 517, 521 (8th Cir. 2006)). "[T]he 'decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.'" Harper, 787 F.3d at 914 (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)).

Wolff's unsupported assertion "that there is a difference of opinion as to whether" Wolff consented falls far short of establishing clear error under this standard. Not only was the officers' testimony consistent and plausible, but the officers' testimony was essentially uncontradicted by record evidence.

In his opening brief, Wolff refers to a "statement" he allegedly made "that he did not want to cut the lock off," but does not cite any evidence showing he ever made

such a statement. Allen—who did testify, but did not witness Wolff's conversations and interactions with the officers—did not testify regarding whether *Wolff* consented to search the shed. Allen testified he had "no idea" if Wolff gave consent because Allen "was not present" when the officers talked with Wolff about cutting the padlock off or when Wolff actually removed the padlock.

On appeal, Wolff relies heavily on Allen's testimony that Allen did not authorize the officers or Wolff to cut Wolff's padlock off the shed. That testimony, which at most partially contradicts some of the officers' testimony, relates only to *Allen's* consent to search, leaving the officers' testimony that *Wolff* consented to the search, as the district court put it, "neither challenged nor refuted at the hearing."[4] Having heard uncontradicted testimony from three credible officers that Wolff both authorized and facilitated the search of the shed, the district court did not err in denying Wolff's motion to suppress. Cf., e.g., Harper, 787 F.3d at 914 (upholding the denial of a motion to suppress based on the testimony of one officer that the defendant verbally consented to the search despite contradictory testimony from the defendant and a lack of corroboration from other officers at the scene).

## III. CONCLUSION

We affirm the judgment of the district court.[5]

_____

_____

[4]Wolff cannot seek suppression based on any alleged violation of Allen's Fourth Amendment rights. See, e.g., United States v. Douglas, 744 F.3d 1065, 1071-72 (8th Cir. 2014).

[5]Because we conclude the officers obtained consent to search the shed, we do not consider the alternative theories offered to justify the search. See United States v. Webster, 625 F.3d 439, 445 (8th Cir. 2010) (explaining a warrantless search "need only be justified by one exception to the Fourth Amendment warrant requirement").