# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3767

_____

United States of America

*Plaintiff - Appellee*

v.

Demetrius Crutchfield

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: October 19, 2020
Filed: November 2, 2020

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Demetrius Crutchfield pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He appeals the denial of a suppression motion arguing a police entry associated with an ambulance response resulted in an unreasonable, unwarranted search of his home. He also appeals the

district court's[1] finding at sentencing that he possessed a firearm in connection with another felony. U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B). We affirm.

## I.

Crutchfield and another man, Taylor Cannon, were shot while standing at the front door of Crutchfield's home. Cannon drove himself to a hospital, and Crutchfield dragged himself into his bedroom and called 911. The 911 operator reported to police that someone on the call said "get the guns out." The first officer to arrive in the area of Crutchfield's home saw a man, Antonio Harris, walking away. Harris knew Crutchfield had been shot and helped the officer find Crutchfield's address, which was a home in the rear of another address. Harris accompanied the officer to Crutchfield's home. Later, additional officers and an ambulance arrived.

Officers saw bullet holes near the front door. When officers entered, Crutchfield was in his bedroom located near the front door. He was bleeding from a gunshot wound to his groin area. Officers entered the bedroom and the nearby kitchen and walked around the outside of the house. In the kitchen, an officer saw suspected drugs on a table. In the bedroom, officers saw an unfired rifle cartridge on the floor. Outside the house officers discovered assault rifles and handguns—some between Crutchfield's residence and the other residence on the property and some beyond a fence on an adjacent, abandoned property. An officer in the kitchen later stated that Harris entered the kitchen and seemed to be trying to distract the officer and retrieve the suspected drugs. Before an ambulance carrying Crutchfield departed for a hospital, officers learned that Cannon had arrived at the hospital with a gunshot wound and had stated that he was shot at Crutchfield's home. Finally, after the ambulance took Crutchfield away, an officer can be heard responding "nah" to

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

another officer who asked if he performed a protective sweep. Officers then re-entered the home. Upon reentry, an officer looked behind the bedroom door and saw more suspected narcotics on a bedside table.

Officers on the scene were familiar with Crutchfield and knew he as a felon. It was later learned that Harris had tossed the guns away from the home after the shooting. In addition, officers later learned that the actual words captured on a recording of the 911 call were "get them all out," even though the 911 operator had erroneously reported that she heard someone say "get the guns out."

Officers then obtained a search warrant stating, "While on the scene Officers noticed ammunition laying around the house, and suspected narcotics. Officers securing the area noticed several assault rifles and handguns that had been thrown into some tall grass just Southeast of the residence." When executing the warrant, officers found a scale in the kitchen, over $500 cash in Crutchfield's bedroom, and additional firearms and ammunition. Tests on the suspected drugs showed 0.3948 grams of cocaine base from Crutchfield's bedside table and 2.5975 grams of methamphetamine from the kitchen.

## II.

We review the denial of a suppression motion alleging an unreasonable search de novo. United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009). We review the district court's underlying findings of historical fact for clear error. United States v. Gill, 354 F.3d 963, 967 (8th Cir. 2004). As an initial matter, police entry into the residence in response to the call for medical aid for a shooting victim was not constitutionally objectionable. Given the fact of a shooting and the other information known to officers at the time, exigent circumstances made it permissible to look into other rooms to ensure the absence of a shooter or additional victims. See Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a

home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."). When doing so, officers almost immediately saw ammunition and suspected narcotics in plain view. Officers were permitted to secure the exterior of the residence for the same reasons. To the extent Crutchfield takes issue with the officers looking on the adjacent property, any objects found there were abandoned. United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999) (abandonment of property eliminates standing to challenge search).

Only two of Crutchfield's arguments against these conclusions merit comment. First, he emphasizes that officers appeared to be hanging out or "frolicking" in a manner inconsistent with a security sweep. In this regard, he notes that body cam footage shows an officer (1) shining a light into a kitchen cupboard and (2) lingering to an extent greater than required to check for persons. Second, he emphasizes the officers' re-entry after the ambulance took Crutchfield away and the discovery of drugs on the bedside table during this second trip into the house.

Crutchfield's arguments do not merit relief. Although he characterizes the officers as "lingering" or "frolicking," the district court permissibly determined that the officer in the kitchen acted out of concern that Harris was attempting to retrieve the suspected narcotics in plain view. See United States v. Green, 560 F.3d 853, 856 (8th Cir. 2009) ("During a properly limited protective sweep, the police may seize an item that is in plain view if its incriminating character is 'immediately apparent.'"). In any event, no information gleaned through lingering in the home, or re-entering after the ambulance departed, aided in securing the search warrant. Rather, officers relied on information obtained permissibly and nearly immediately upon entry into the residence. To the extent any officer might have exceeded the permissible scope of a security sweep, any such transgression led, at most, to the discovery of evidence that inevitably would have been found upon execution of the wholly untainted warrant. Cf. United States v. Swope, 542 F.3d 609, 616–17 (8th Cir. 2008) (holding

that even where a warrant application is tainted, a search is not unreasonable if untainted portions provide probable cause).

Crutchfield also argues the district court erred in finding that he possessed the firearms in connection with another felony. Crutchfield argues specifically that the district court erroneously stated at sentencing that he admitted to possessing the drugs. In addition, he argues that the drugs and trafficking paraphernalia belonged to Harris. The district court acknowledged that Harris rather than Crutchfield may have demonstrated a stronger connection to the evidence of drug trafficking. Harris's larger role, however, does not preclude Crutchfield's involvement. Further, the district court found it meaningful that the residence was Crutchfield's, the guns were numerous and conspicuous, Crutchfield's room contained some of the drugs along with over $500 cash and ammunition, and Crutchfield had a history of drug trafficking. To the extent the district court at sentencing misspoke and indicated that Crutchfield had admitted drug *possession*, we find the error harmless. The district court expressly found a connection to drug *trafficking* based on the entirety of the evidence, and we find no clear error in the district court's ultimate finding. See U.S.S.G. § 2K2.1, cmt. n.14(B).

We affirm the judgment of the district court.

_____