# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3321
_____

United States of America

*Plaintiff - Appellee*

v.

Pierre Cornelius Stewart

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2021
Filed: April 28, 2022
_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Following a jury trial, Pierre Cornelius Stewart was convicted of conspiracy to distribute heroin and possession of heroin with the intent to distribute. He appeals the district court's[1] denial of his motion to suppress and its ruling to limit the cross-

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

examination of a law enforcement witness at trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On September 14, 2018, Minnesota State Trooper Nicholas Otterson stopped at a grocery store parking lot to speak with a man he later described as a "known drug user." As they were talking, Trooper Otterson saw a woman get out of the driver's seat of a different vehicle—a white GMC Yukon—and run toward them. Trooper Otterson testified that as soon as the woman saw him, "she stops and freezes and looks right at [him] with her eyes wide . . . then turns around immediately and goes back to the white Yukon." In his view, she was possibly there to engage in a "hand-to-hand drug transaction." He watched as the woman got back into the Yukon and quickly drove away. He also noticed that her front-seat passenger was not wearing a seatbelt shoulder strap and that the Yukon lacked front and back license plates. Trooper Otterson returned to his squad car and followed the Yukon. He briefly lost sight of it, but then saw it sitting at a "T" intersection, without its turn signal illuminated.[2] The Yukon then turned right, and Trooper Otterson activated his lights and siren and pulled it over.

Trooper Otterson first spoke with the driver, who said she did not have a driver's license, and then with Stewart, the front-seat passenger. Stewart admitted he had marijuana in his bookbag but denied selling drugs. After Trooper Otterson's drug dog alerted on the Yukon, the trooper searched the vehicle and found heroin in a front compartment. Stewart was arrested and later charged with conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

---

[2]Failing to signal at least one hundred feet before turning is a traffic violation in Minnesota.

Stewart filed a motion to suppress the evidence seized from the Yukon. After an evidentiary hearing, the district court denied the motion. A jury found Stewart guilty on both counts in the indictment, and he was sentenced to 230 months on each count, to run concurrently, followed by an eight-year term of supervised release. Stewart timely appealed.

## II.

First, Stewart appeals the denial of his motion to suppress. He argues, as he did at the district court, that Trooper Otterson lacked a reasonable, articulable suspicion that the occupants of the Yukon were involved in any criminal activity and, thus, the traffic stop was unlawful. We review de novo the denial of a motion to suppress that alleges an unreasonable search and seizure. United States v. Brooks, 982 F.3d 1177, 1179 (8th Cir. 2020). "We review the district court's underlying findings of historical fact for clear error." United States v. Crutchfield, 979 F.3d 614, 616 (8th Cir. 2020).

At the evidentiary hearing, Trooper Otterson testified that he stopped the Yukon after witnessing three traffic violations. In particular, he said that the front passenger was not wearing a seatbelt before the stop; that the Yukon lacked front and rear plates and no temporary registration was visible; and that the Yukon failed to signal continuously for 100 feet before turning. The district court found this testimony credible and sufficient to establish reasonable suspicion to justify the stop.

Stewart concedes that, if believed, Trooper Otterson's testimony was sufficient to justify the stop. But he asserts that the district court clearly erred in its credibility finding and that the trooper's testimony was "plainly contradicted" by the squad car videos.[3] Specifically, Stewart argues that the videos show the trooper

---

[3]Trooper Otterson's squad car had two cameras, both near the front of the squad car. One camera faced inward and the other faced out through the front windshield.

could not have seen that Stewart was not wearing a seatbelt, that the vehicle lacked a "registration sticker," or that the Yukon failed to signal 100 feet before the turn.

Stewart is right that the video footage does not confirm Trooper Otterson's testimony concerning each of the three traffic violations. But nothing in the video footage undermines this testimony. See United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) ("[T]he 'decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.'" (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995))). Rather, the cameras were simply not aimed in a direction to capture the trooper's observations, and the video footage "neither confirms nor refutes" Trooper Otterson's assertions. United States v. Briasco, 640 F.3d 857, 860 (8th Cir. 2011). "Credibility assessments are 'the province of the trial court,'" Harper, 787 F.3d at 914 (quoting Heath, 58 F.3d at 1275), and "[a] credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal," United States v. Morris, 915 F.3d 552, 555 (8th Cir. 2019) (quoting United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007)). The district court credited the trooper's testimony, and we find no clear error in this credibility finding.

III.

Next, Stewart argues that the district court improperly limited his cross-examination of Trooper Otterson at trial. "We review evidentiary rulings regarding the scope of a cross examination for abuse of discretion."[4] United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015) (quoting United States v. Kenyon, 481 F.3d 1054, 1063 (8th Cir. 2007)). We will affirm the district court's evidentiary ruling "unless we find an abuse of discretion that is both clear and prejudicial."

_____

[4]Where the Sixth Amendment's Confrontation Clause is implicated, our review is instead de novo. Williams, 796 F.3d at 960. Stewart does not raise a Confrontation Clause challenge in this appeal.

-4-

United States v. Perez-Trevino, 891 F.3d 359, 373 (8th Cir. 2018); see also United States v. Arias, 936 F.3d 793, 797 (8th Cir. 2019) (evidentiary rulings only reversed if "they constitute a clear and prejudicial abuse of discretion" (quoting United States v. Holy Bull, 613 F.3d 871, 873 (8th Cir. 2010)).

In addition to testifying about the traffic stop, Trooper Otterson provided expert testimony as a Drug Recognition Evaluator (DRE). A DRE is "trained to observe the signs and symptoms of people under the influence of different types of drugs" in connection with impaired driving. Trooper Otterson explained that, through his DRE training, he learned how to recognize signs of drug use, including physical markers a person might exhibit, efforts taken to conceal the conduct, and items used to facilitate it. Turning to the stop in this case, Trooper Otterson identified the specific indications of drug use he observed, including tinfoil, Q-tips, and dryer sheets in the Yukon; the driver's bloodshot eyes, pale skin, open sores, and use of sunglasses on a cloudy day; and Stewart's own reddened eyes.

On cross-examination, the defense questioned Trooper Otterson about his DRE training and, specifically, about allegations that officers participating in the training program supplied drugs to young people in Minneapolis, presumably to observe their behavior while under the influence. Trooper Otterson responded that he did not have any knowledge of such conduct. When the defense pressed the trooper on the point, the government objected on grounds of relevance.

The district court took a break to give the government the opportunity to speak with Trooper Otterson about the allegations. The government then told the court that the allegations in question led to a six-month investigation of the DRE program but that Trooper Otterson was exonerated and allowed to return to work after one week of paid administrative leave. Trooper Otterson remained a DRE and a DRE instructor. The defense argued that this line of questioning was nevertheless relevant to the quality and nature of the trooper's training and, in turn, to the reliability of his testimony, and that the government opened the door by asking the witness about his expertise in drug recognition.

The district court sustained the objection,[5] finding the inquiry into the alleged misconduct at the DRE training program was not relevant and, in any event, failed to satisfy the balancing test of Federal Rule of Evidence 403. The court further reasoned that the questioning did not probe the "actual training that [the trooper] had received." Rather, it was more akin to character evidence pursuant to Federal Rule of Evidence 608(b),[6] which Stewart reiterates on appeal he was not seeking to introduce.

We see no abuse of discretion in the district court's ruling. Stewart contends that an inquiry into the alleged misconduct was relevant because it revealed "serious flaws" in the trooper's training, but the district court found no "nexus" between the allegations and Trooper Otterson's trial testimony. On appeal, Stewart does not explain how the officers' purported illegal conduct undermines the reliability of Trooper Otterson's opinion on how to identify drug paraphernalia or signs of illegal drug use. Under the circumstances, the district court acted within its discretion to curtail the inquiry. See Sosna v. Binnington, 321 F.3d 742, 745 (8th Cir. 2003) (finding no abuse of discretion in district court's decision to limit the scope of expert cross-examination based on relevance and risk of confusing the jury or unfairly prejudicing party); see also Fed. R. Evid. 403 (a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair

---

[5]The district court sustained the government's objection but left open the possibility of revisiting the ruling if Stewart identified testimony from other experts that cast doubt on Trooper Otterson's opinions. Stewart did not ask the district court to revisit the ruling for this or any other reason.

[6]Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness . . . .").

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

## IV.

We affirm the denial of Stewart's motion to suppress and the judgment of the district court.

_____