# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3422
_____

United States of America

*Plaintiff - Appellee*

v.

Dominic Jackson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas
_____

Submitted: September 23, 2024
Filed: December 26, 2024
[Unpublished]
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Dominic Jackson served a 180-month sentence for drug-distribution offenses and began an eight-year term of supervised release in March 2020. In October 2023, the district court[1] held a revocation hearing, found that Jackson had violated his

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

supervised release conditions, and sentenced him to 57 months of imprisonment and five years of supervised release. Jackson appeals, arguing that insufficient evidence supported the district court's findings.

I.

In its revocation petition, the government alleged that Jackson violated his supervised release conditions in several ways: assaulting his ex-girlfriend and damaging her car window; pointing a gun at a passenger in his car; possessing various controlled substances; failing to report to his probation officer twice; failing to report for drug testing seven times; and failing five drug tests, one of which reported the presence of marijuana, amphetamine, and oxycodone. Jackson admitted to breaking the car window, failing to report to his probation officer and failing to report for drug testing, and submitting positive drug tests. Jackson denied all other allegations.

At the October 2023 revocation hearing, the government called Jackson's ex-girlfriend, Sarah Bates.[2] Bates testified that Jackson used a two-by-four to hit her on the nose, the side of her face, and the back of her head, then smashed her car's back window and threatened to kill her. She reported the incident to officers at the hospital where she worked, who took photographs. Those photographs, admitted into evidence, showed Bates with blood on her face and shirt and a cut on her chin, as well as her car's broken back window. Michael Gladness, one of the responding officers at Bates's workplace, testified that he was called to the hospital lobby, where he found Bates visibly distraught, with "blood on her" and a contusion on her chin. She told him that Jackson had tried to slash her car's tires and break its side window, but when neither attempt succeeded, he retrieved a two-by-four, which he used to hit her and smash her car window. In addition, Bates testified that a few days before the two-by-four incident, Jackson had choked her, and she had bruised herself

_____

[2]We use the pseudonym "Sarah Bates" to protect the identity of Jackson's ex-girlfriend. See United States v. Daye, 4 F.4th 698, 700 n.3 (8th Cir. 2021) (per curiam).

fending him off. A photograph of Bates's bruised arm was admitted without objection.

During the revocation hearing, Jackson highlighted some inconsistencies in Bates's account. For example, Bates testified that her glasses broke and fell off when Jackson hit her face, but Officer Gladness testified that Bates's glasses were not broken when he met with her after the incident. Bates claimed that she had thrown a cup of water on Jackson, but she never shared this detail with Officer Gladness. She testified that Jackson "did not put his hand in [her] face," but she told Officer Gladness that Jackson had smeared blood on her face. Bates also gave arguably inconsistent testimony as to the order in which Jackson hit her, her car's side window, and its back window. Finally, Officer Gladness admitted that Bates's injuries appeared less severe than one might expect from having been hit repeatedly with a two-by-four.

As to the allegation that Jackson possessed controlled substances, the government called two witnesses. Officer Thomas Shahan testified that his task force went to Jackson's apartment to arrest him on a federal warrant. According to Shahan, when officers first visited Jackson's residence on August 3, 2023, they found a woman and man at the apartment, but not Jackson. They returned on August 8 and found an eviction notice, dated August 3, posted on the door. The notice, addressed to Jackson, demanded that he vacate the apartment within three days due to his and/or his occupants' or guests' actions endangering others residing in the complex or present on the property. Again, Jackson was not at the apartment.[3]

Task force officer Jack Hendon also testified, explaining that when officers entered the vacated apartment on August 8, they found large quantities of drugs in the master bedroom and closet, and elsewhere. The drugs included marijuana, methamphetamine, and oxycodone, as well as a small amount of cocaine. Officers

---

[3]A friend of Jackson's testified at the revocation hearing that Jackson had stayed with her from August 3 until August 10.

also found unopened mail addressed to Jackson and an empty pill bottle with Jackson's name on it in a jacket in the bedroom closet.

The district court found the government had proven by a preponderance of the evidence that Jackson (1) assaulted Bates; and (2) possessed controlled substances.[4] Both were grade A violations under United States Sentencing Guideline § 7B1.1(a).[5] The court calculated a Guidelines range of 46 to 57 months and imposed a 57-month sentence plus five years of supervised release. Jackson's sole argument on appeal is that the district court erred in finding he had committed grade A violations under the Guidelines.

## II.

"A district court may revoke supervised release if the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release." Daye, 4 F.4th at 700 (per curiam) (citation omitted). We review the district court's revocation decision for abuse of discretion and its factual findings for clear error. United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003). We find clear error only when "we are 'left with the definite and firm conviction that a mistake has

---

[4]The district court found the government failed to prove the alleged violation involving Jackson pointing a gun at a passenger in his car, because the passenger, who was the sole witness to testify in support of this violation, admitted at the hearing that Jackson did not in fact threaten or point a gun at him.

[5]See Ark. Code Ann. § 5-13-301(a)(1)(A), (a)(2) (prohibiting threats "to cause death or serious physical injury . . . to another person" as a Class D felony); id. § 5-13-202(a)(2), (b)(2) (defining second-degree battery as intentionally causing "physical injury to another person by means of a deadly weapon other than a firearm," which is a Class D felony); id. § 5-4-401(a)(5) (punishment for Class D felony is up to six years' imprisonment); 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (noting that possession with intent to distribute 500 grams or more of methamphetamine mixture carries sentence of at least ten years' imprisonment).

been committed.'" United States v. Finley, 612 F.3d 998, 1002 (8th Cir. 2010) (quoting Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998)).

Starting with the alleged assault, the district court credited Bates's testimony. That credibility determination is "virtually unreviewable on appeal." Carothers, 337 F.3d at 1019 (quoting United States v. Hernandez, 281 F.3d 746, 748 (8th Cir. 2002)). Nor was Bates's account so "internally inconsistent," "implausible on its face," or contradicted by extrinsic evidence "that a reasonable fact-finder would not credit it." United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)). To the contrary, photographs showed Bates with blood on her face and shirt, a cut on her chin, and a mark on her nose. We find no clear error in the court's estimation that, inconsistencies in Bates's testimony aside, it was more likely than not that Jackson assaulted her. See Daye, 4 F.4th at 700–01 (holding district court did not clearly err by crediting witness's past statements, which contradicted witness's testimony at the revocation hearing, to find violation); United States v. Frosch, 758 F.3d 1012, 1013–14 (8th Cir. 2014) (per curiam) (affirming district court's revocation where court credited both a woman's testimony that defendant physically assaulted her, along with photographs of bruises on her body and evidence from the scene).

Whether the government met its burden of proving that Jackson possessed controlled substances at his apartment is a closer call. However, Jackson challenges only the district court's findings that he committed grade A violations. Jackson's advisory Guidelines range remains the same regardless of whether the government established both or only one of the violations. He received a sentence within the applicable range, and he makes no argument about that sentence. Under these circumstances, we need not decide whether there is sufficient evidence in the record to conclude that he possessed controlled substances as alleged in the petition to revoke. See United States v. Salsberry, 825 F.3d 499, 502 (8th Cir. 2016).

We affirm the judgment of the district court.

_____