# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1777

_____

United States of America

*Plaintiff - Appellee*

v.

George Madison Kitchen, IV

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: January 17, 2025
Filed: August 13, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

After fleeing a traffic stop and leading law enforcement on a high-speed chase, George Kitchen was detained and charged with two counts related to drug distribution.  Kitchen sought to suppress evidence connected to the traffic stop and

chase. The district court[1] denied his motion, and a jury convicted him on both counts. Kitchen appeals his convictions. We affirm.

## I. Background

In July 2022, Council Bluffs, Iowa, Police Officer Matthew Sharp observed a white SUV drive through a red-light intersection off Interstate 29. Officer Sharp stopped the vehicle and approached the driver, Kitchen, and the passenger, Cardel Harris. Noticing a strong odor of marijuana emanating from the vehicle, Sharp called for backup after returning to his cruiser to verify Kitchen's license and to check for outstanding warrants. Another officer arrived, and Sharp reapproached Kitchen's vehicle and explained he was going to search the vehicle. Sharp told Kitchen that if nothing was found, he would let Kitchen go with a warning for the red-light violation. Kitchen verbally agreed to the search but then immediately drove off.

Because Sharp and the other officer were unable to catch Kitchen, Pottawattamie County Sheriff Deputy Jesse Windham began pursuing Kitchen on Interstate 29. At mile marker 62.8, Windham observed a bag fly from the passenger side of Kitchen's vehicle and explode into a white, powdery cloud upon hitting the ground. More items were thrown out about a mile later. When law enforcement returned to the area, they recovered three packages containing over 300 grams of methamphetamine and one package containing over 14 grams of cocaine.

Law enforcement eventually placed stop sticks on the interstate, which destroyed Kitchen's tire and ended the chase. Kitchen and Harris were both detained. Upon searching Kitchen, officers found about $1,000 in his pocket. In the vehicle, they found a portion of a smoked marijuana blunt, "a box of ziplock bags,"

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

and two cell phones. A later search of Kitchen's cell phone revealed photos and text messages indicating drug transactions.

A grand jury indicted both Kitchen and Harris, charging them with one count of possessing more than fifty grams of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of possessing cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(C). Both counts also alleged aiding and abetting the charged offenses under 18 U.S.C. § 2. Kitchen moved to suppress evidence found as a result of the traffic stop, arguing Sharp had no reasonable suspicion or probable cause to stop him and unlawfully extended the stop. The district court denied Kitchen's motion after an evidentiary hearing, finding that Kitchen's red-light violation justified the stop and that the odor of marijuana authorized extending the stop to search his vehicle.

After a three-day trial, a jury found Kitchen guilty of the charged offenses. The district court sentenced Kitchen to a total of 260 months of imprisonment.

## II. Analysis

On appeal, Kitchen argues the district court erred by denying his motion to suppress evidence because Officer Sharp's traffic stop violated his Fourth Amendment rights. Kitchen also argues the district court erroneously admitted hearsay and bad act evidence at trial. We address each argument in turn.

### A. Motion to Suppress

In an appeal from a district court's denial of a motion to suppress evidence, we review the court's "factual findings for clear error" and its "conclusion of whether the Fourth Amendment was violated" de novo. *United States v. Brown*, 60 F.4th 1179, 1182 (8th Cir. 2023). Reversal is warranted only if the denial of the motion was "unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was

made." *United States v. Rose*, 124 F.4th 1101, 1105 (8th Cir. 2025) (quoting *United States v. Douglas*, 744 F.3d 1065, 1068 (8th Cir. 2014)).

The Fourth Amendment protects against unreasonable seizures. *See* U.S. Const. amend. IV. "A traffic stop is a seizure" and "must be supported by reasonable suspicion or probable cause." *Rose*, 124 F.4th at 1105 (quoting *United States v. Maurstad*, 35 F.4th 1139, 1143 (8th Cir. 2022)). "[A]ny traffic violation, however minor, provides probable cause for a traffic stop." *Id.* (quoting *Maurstad*, 35 F.4th at 1143).

Here, the district court found Officer Sharp initiated his traffic stop after he saw Kitchen drive through a red light. This finding is supported by the record. Sharp testified that he witnessed Kitchen commit a red-light violation. While Kitchen claims the real reason for the traffic stop was that Officer Sharp mistakenly thought Kitchen's vehicle lacked license plates, his claim, at its core, challenges the district court's finding that Officer Sharp's testimony was credible. Credibility findings, however, are "the province of the trial court," and a "credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *United States v. Stewart*, 32 F.4th 691, 694 (8th Cir. 2022) (first quoting *United States v. Harper*, 787 F.3d 910, 914 (8th Cir. 2015); and then quoting *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019)).

Applying these principles, we affirm the district court's decision to credit Officer Sharp's testimony. Kitchen points to a portion of Officer Sharp's body camera footage in which Sharp reports to dispatch "an all-white GMC with no plates" without mention of a red-light violation. Yet Sharp testified that it is customary for police when making a traffic stop to simply tell dispatch their location and a description of the vehicle. Likewise, while Kitchen notes Officer Sharp did not immediately stop him but followed him for about half a mile, Sharp testified he waited to pull Kitchen over to avoid blocking traffic due to a concrete barrier. We have no reason to doubt the district court's determination that Sharp's testimony was credible, so we conclude there was probable cause for a traffic stop.

Next, Kitchen challenges the district court's ruling that Officer Sharp did not unlawfully extend the traffic stop because the smell of marijuana in Kitchen's vehicle provided probable cause to search the vehicle.

A lawful traffic stop becomes unlawful if its duration is improperly extended. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015). "A delay that 'prolongs— *i.e.*, adds time to—the stop' to conduct investigatory actions unrelated to the purposes of the stop is impermissible unless it is supported by reasonable suspicion." *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir. 2020) (citation omitted) (quoting *Rodriguez*, 575 U.S. at 357). So, an officer can extend a stop beyond addressing the traffic violation and traffic-related inquiries if there is reasonable suspicion of additional criminal activity. *See id.* "We have repeatedly held that the odor of marijuana emanating from a vehicle during a traffic stop . . . gives the officer probable cause to search the vehicle." *United States v. Virrueta*, 121 F.4th 706, 710 (8th Cir. 2024).

Kitchen offers various reasons for why the district court's ruling is erroneous. But all suffer from a similar defect as Kitchen's first argument in that they unsuccessfully attack the district court's finding that Officer Sharp smelled marijuana when he first approached Kitchen's vehicle. The district court, however, was free to believe Sharp's testimony that upon stopping and approaching Kitchen's vehicle, there was a strong odor of marijuana emanating from the vehicle. *See United States v. Strawther*, 125 F.4th 860, 865 (8th Cir. 2025) (rejecting the defendant's argument that the district court erred by crediting the officer's testimony that he smelled burnt marijuana). Kitchen does not point to "extrinsic evidence that contradicts [Officer Sharp's] story" or otherwise show his testimony is "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it," so we will not second-guess the district court's credibility determination. *United States v. Williams*, 131 F.4th 652, 658 (8th Cir. 2025) (quoting *Harper*, 787 F.3d at 914). Thus, we affirm the district court's conclusion that Sharp did not unlawfully extend the traffic stop when he called and waited for backup to search Kitchen's vehicle.

## B. Hearsay

We now turn to Kitchen's argument that the district court erroneously admitted hearsay statements at trial.

The district court admitted the challenged statements under the co-conspirator exclusion. Under this exclusion, a statement is not hearsay when it is "offered against an opposing party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The government must prove by a preponderance of the evidence that (1) there was a conspiracy involving the defendant and declarant and that (2) the statement was made during and in furtherance of the conspiracy. *See United States v. Cathey*, 997 F.3d 827, 834 (8th Cir. 2021).

At trial, D.S., a cooperating witness for the government, testified about Kitchen's involvement in a prior drug conspiracy. In 2019, D.S. had been indicted with a man named Terry Finch for a conspiracy to distribute drugs smuggled from Mexico to Kansas City. D.S. testified Finch had told D.S. that Finch was providing drugs to Kitchen to distribute as a part of their operation. The district court admitted this testimony under the co-conspirator hearsay exclusion, finding that (1) Kitchen had been involved in a conspiracy with D.S. and Finch to distribute drugs and that (2) Finch's statements to D.S. were made during and in furtherance of that conspiracy.

Kitchen argues these findings were erroneous both because the record shows he was not a part of D.S.'s and Finch's conspiracy to distribute drugs, and because Finch's statements to D.S. were only intended to further the conspiracy between D.S. and Finch.[2] We disagree.

_____

[2]Kitchen also notes he was not charged with conspiracy in this case; however, a defendant does not need to be charged with conspiracy for the co-conspirator hearsay exclusion to apply. *See United States v. Lewis*, 759 F.2d 1316, 1339 (8th Cir. 1985).

It is unresolved whether admissibility rulings under Rule 801(d)(2)(E) are reviewed for abuse of discretion or clear error, yet we "need not resolve that question because [Kitchen's] argument 'fails under either standard.'" *See United States v. Goodman*, 88 F.4th 764, 767 (8th Cir. 2023) (quoting *United States v. Ramirez-Martinez*, 6 F.4th 859, 867 (8th Cir. 2021)).

First, the record supports the district court's finding that Kitchen was involved in a conspiracy with D.S. and Finch to distribute drugs. For example, D.S. testified, without any objection from Kitchen, that he had many phone conversations with Kitchen in which Kitchen would "adamant[ly] and persistent[ly]" request the drugs Kitchen was receiving from D.S. and Finch to distribute in Kansas City be delivered to Omaha. Likewise, the record supports the district court's finding that Finch's statements to D.S. were made in furtherance of the conspiracy. "The phrase 'in furtherance of the conspiracy' is broadly interpreted" to include statements that identify a co-conspirator's role. *United States v. Sims*, 999 F.3d 547, 552 (8th Cir. 2021). Finch's statements to D.S. identified Kitchen's role as a distributor in their drug operation and thus were made in furtherance of the conspiracy.

## C. Other Bad Act Evidence

Finally, we address Kitchen's argument that the district court erred by admitting evidence of his other drug-distribution activities under Rule 404(b).

Kitchen specifically challenges the admission of (1) D.S.'s testimony, (2) evidence that he fled from an August 2022 traffic stop, and (3) evidence that he was convicted in 2015 for possession with intent to distribute. We review admissions under Rule 404(b) for abuse of discretion, reversing only when the admitted evidence had no bearing on the case and was offered solely to prove the defendant's criminal propensity. *See United States v. Drew*, 9 F.4th 718, 722 (8th Cir. 2021).

Rule 404(b) prohibits using evidence of a defendant's other crimes or bad acts to show criminal propensity but permits such evidence for other purposes such as proving motive, intent, plan, knowledge, or absence of mistake. *See* Fed. R. Evid. 404(b). To be admitted, the evidence must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Harry*, 930 F.3d 1000, 1006 (8th Cir. 2019) (quoting *United States v. Turner*, 781 F.3d 374, 389 (8th Cir. 2015)).

Given our precedent, Kitchen faces an uphill battle. At trial, Kitchen raised a "mere presence" defense by arguing his passenger and co-defendant, Harris, had possessed the drugs thrown from his vehicle without his knowledge. Kitchen claimed he sped away solely because he feared arrest for driving under the influence of marijuana. This "mere presence" defense made Kitchen's mental state a material issue at trial and increased the probative value of any evidence tending to show his knowledge of the drugs, his motive to flee police, or his intent to aid and abet Harris's efforts to discard the drugs. *See, e.g.*, *Harry*, 930 F.3d at 1006 (explaining that when a defendant puts his mental state at issue by arguing "mere presence," evidence of other bad acts is admissible to prove knowledge and intent).

Despite Kitchen's attempts to characterize the evidence of his other drug-distribution activities as impermissible propensity evidence, Kitchen fails to show how the evidence does not fall within our precedent.[3] For instance, in revealing that Kitchen had driven drugs from Kansas City to distribute them in Omaha, Council Bluffs, and Sioux City from 2018 to 2021, D.S.'s testimony suggested Kitchen knew

---

[3]Kitchen also argues the district court erred in admitting evidence of his flight from an August 2022 traffic stop because it was a not a "prior" bad act. But Rule 404(b) is not limited to evidence of prior bad acts; instead, it expressly encompasses "any other crime, wrong, or act." *See United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023) ("[S]ubsequent drug activity may be probative of an individual's knowledge or intent regarding a drug trafficking organization.").

of the drugs thrown from his vehicle during the July 2022 traffic stop and chase while he was driving a route that connected all three cities.

Furthermore, the district court instructed the jury on the limited purpose for which it could consider evidence of Kitchen's other drug-distribution activities. Under our precedent, limiting instructions work to mitigate any prejudice that may be caused by the admission of other bad acts. *See, e.g.*, *United States v. Horton*, 756 F.3d 569, 580 (8th Cir. 2014) (concluding "the district court's limiting instruction mitigated any potential prejudicial effect evidence of Holmes's prior convictions may have had on the jury").

Even if the district court erred in admitting some evidence of Kitchen's other drug-distribution activities, reversal is not warranted because any error was harmless in light of the weight of the government's unchallenged evidence. *See United States v. Arias*, 60 F.4th 1138, 1142 (8th Cir. 2023); *United States v. Riepe*, 858 F.3d 552, 561 (8th Cir. 2017) (stating an error is harmless if it did not influence or only had a slight influence on the verdict). In addition to recovering packages of drugs thrown from Kitchen's vehicle after he sped off, law enforcement found text messages on Kitchen's phone that establish he was distributing drugs in July 2022. In fact, some indicate Kitchen had arranged to meet with two customers on the night that Officer Sharp pulled him over. Due to the overwhelming evidence of Kitchen's guilt, any error by the district court in admitting evidence of Kitchen's other drug-distribution activities was harmless.

## III. Conclusion

For the foregoing reasons, we affirm Kitchen's convictions.

_____