# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1640
_____

United States of America

*Plaintiff - Appellee*

v.

Quincy Martez Chambers

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 15, 2025
Filed: April 4, 2025
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Quincy Martez Chambers for possession of ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court[1]

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

sentenced him to 360 months in prison. Chambers appeals his conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Nairobi Anderson, the mother of Chambers's child, was shot in the chest and struck in the head with the gun by a man wearing a ski mask. After Anderson and the child took cover, more shots were fired. On the theory that Chambers committed the shooting, a jury convicted him for possessing ammunition as a felon under 18 U.S.C. § 922(g)(1).

At sentencing, the district court found the object of Chambers's offense was first degree murder, making the base offense level 33. It applied a three-point enhancement for Anderson's injuries, and a three-point enhancement for obstruction of justice under U.S.S.G. §§ 2A2.1(b)(1) and 3C1.1, respectively. Finding Chambers to be an Armed Career Criminal under 18 U.S.C. § 924(e), the district court applied the statutory range of 15 years to life. It sentenced Chambers to 360 months in prison.

## II.

Chambers claims the evidence insufficiently proves he shot Anderson and, therefore, that he possessed ammunition. This court reviews de novo the sufficiency of the evidence. *United States v. Johnson*, 745 F.3d 866, 868–69 (8th Cir. 2014). "We view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." *Id*. at 869. "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* "[I]t is within the province of the jury to make credibility assessments and resolve conflicting testimony." *United States v. Torres*, 552 F.3d 743, 747 (8th Cir. 2009). A jury's credibility determinations are "virtually unassailable on appeal." *United States v. Nosley*, 62 F.4th 1120, 1130 (8th Cir. 2023).

Chambers emphasizes that Anderson recanted her initial identifications of him as the shooter. And defense witnesses testified that Chambers was traveling at the time. But conflicting evidence included: body-camera footage of Anderson's repeated identifications of Chambers at the scene; multiple witnesses hearing these identifications; a car associated with Chambers fleeing the scene; messages from Chambers saying it won't "happen" again; and Chambers suggesting marriage to silence Anderson. Viewing the evidence most favorably to the government and deferring to the jury's credibility determinations, the jury had sufficient evidence to find Chambers committed the shooting.

Chambers challenges as irrelevant and overly prejudicial the admission of text messages and still shots from a video visitation between Anderson and Chambers. This court reviews evidentiary rulings for an abuse of discretion and reverses only "if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion." *United States v. Keys*, 918 F.3d 982, 985 (8th Cir. 2019). The messages and images were relevant to show Anderson's possible bias and motive for recanting her identifications. *See United States v. Harris*, 956 F.2d 177, 181 (8th Cir. 1992) ("[E]vidence showing a witness's bias is almost always admissible."), *citing United States v. Abel,* 469 U.S. 45, 52 (1984).

Because Chambers did not object on Rule 403 grounds at trial, this court reviews for plain error. *See United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2024) ("If the defendant fails to object, we review for plain error."). *See also* **Fed. R. Evid. 403** ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). The messages and images were probative of Anderson's credibility—a key issue—and their prejudicial effect was lessened in the context of Chambers shooting the mother of his child with the child present—an egregious act at the core of the case.

Chambers challenges as hearsay the admission of Anderson's statements identifying him as the shooter. He argues too much time lapsed between the shooting

and the statements for them to constitute excited utterances. *See* **Fed. R. Evid. 803(2)** (an excited utterance is: "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."). "To determine whether a declarant was still under the stress of excitement caused by an event when a statement was made, we consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement." *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007) (cleaned up). Statements by victims with signs of stress are admissible even if made 30 minutes after shots are fired near them. *See United States v. Phelps*, 168 F.3d 1048, 1055 (8th Cir. 1999) ("The lapse of 15 to 30 minutes between an exciting incident and a statement does not render the statement inadmissible."). Here, body-camera footage shows Anderson under stress—shot and repeatedly asking "am I going to be okay"—while making the statement about 10 minutes after the shooting, thus admissible as an excited utterance.

## III.

Chambers contends the district court violated his Sixth Amendment right by forcing him either to proceed with conflicted counsel or to represent himself. He alleges a conflict existed because his lawyer previously represented a government witness. This court reviews de novo the issue whether a defendant's right to counsel was violated. *United States v. Brown*, 956 F.3d 522, 524 (8th Cir. 2020). "The mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief." *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996). "The defendant must show that this successive representation had some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Id.* ("An example may be where counsel's cross-examination of a former client is impeded for fear of misusing confidential information."). In his underdeveloped argument, Chambers identifies no actual adverse effect from his lawyer's prior representation, thus failing to demonstrate prejudice.

-4-

## IV.

Contesting his sentence, Chambers disputes the cross-reference to attempted murder, the enhancements for severity of injuries and obstruction of justice, and the Armed Career Criminal statutory range. This court reviews de novo the application of the Sentencing Guidelines. *United States v. Clark*, 999 F.3d 1095, 1097 (8th Cir. 2021). It reviews the underlying factual findings for clear error. *Id.*

Chambers argues the district court erroneously applied the cross-reference to attempted first degree murder because he lacked the requisite intent. *See* **U.S.S.G. §§ 2K2.1(c)** (directing cross-reference to § 2X1.1 "[i]f the defendant used or possessed any firearm or ammunition . . . in connection with the commission or attempted commission of another offense"); **2X1.1(c)** (directing cross-reference to another offense guideline for an attempt); **2A2.1(a)** (setting a base offense level of 33 "if the object of the offense would have constituted first degree murder"). "For this cross-reference to § 2A2.1 to apply, the government need[s] to prove by a preponderance of the evidence that [the defendant] acted with malice aforethought and premeditation." *United States v. Angel*, 93 F.4th 1075, 1078 (8th Cir. 2024). *See* **18 U.S.C. § 1111(a)** ("Murder is the unlawful killing of a human being with malice aforethought."). Attempted first-degree murder "requires the specific intent to kill." *United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023). "Ample case law shows that shooting at a particular person, or a group of people, demonstrates a specific intent to kill." *Id.* (cleaned up). *See Angel*, 93 F.4th at 1079 (affirming a cross-reference to attempted murder when defendant fired five shots, with one hitting the victim in the leg).

Chambers demonstrated a specific intent to kill by shooting Anderson in the chest, striking her on the head, and, after a pause, firing multiple shots at an apartment where she and their child took cover.

Because the cross-reference applied, Chambers faced an enhancement for the severity of Anderson's injuries. *See* **U.S.S.G. § 2A2.1(b)(1)**. He argues her injuries

warranted a two-point enhancement for a "serious bodily injury" rather than a three-point enhancement for a bodily injury between "serious" and "permanent or life-threatening." *Id*. The district court did not clearly err by finding Anderson's injuries—requiring staples in her head, surgery, and a month of hospitalization—were more than serious.

Chambers disputes the district court's application of an enhancement for obstruction of justice. U.S.S.G. § 3C1.1 imposes a two-point enhancement if "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." This court reviews de novo "whether U.S.S.G. § 3C1.1 applies to specific conduct." *United States v. Sykes*, 4 F.3d 697, 699 (8th Cir.1993) (per curiam). By text, Chambers suggested he and Anderson get married so the government could not "use" her against him. Chambers's "scheme" to prevent Anderson from testifying "amounts to aiding and abetting the obstruction of justice for purposes of § 3C1.1." *United States v. Blair*, 54 F.3d 639, 645 (10th Cir. 1995) (upholding an obstruction-of-justice enhancement when defendant married witness to invoke marital privilege and avoid testifying). *See United States v. Peel*, 747 F. Appx. 498, 501 (9th Cir. 2018) (upholding an obstruction-of-justice enhancement when defendant "tried to convince the girlfriend to marry him so that she would not testify against him" and his "girlfriend established many facts important to the outcome of the case."); *United States v. Browne*, 89 F.4th 662, 667 (8th Cir. 2023) (affirming admission of evidence of scheme to marry co-conspirator to trigger spousal testimonial immunity as relevant to obstruction enhancement).

Chambers contends he lacks the requisite predicate offenses to be sentenced under the Armed Career Criminal Act (ACCA). A defendant with "three previous convictions . . . for a violent felony or a serious drug offense" must be sentenced as an Armed Career Criminal, thus imprisoned for "not less than fifteen years." **18 U.S.C. §§ 924(e)(1), (c)(5)(A).**

Chambers agrees he has two violent convictions. He argues that the third offense—domestic battering in the second degree—is not a "conviction" because he

pled nolo contendere. A nolo contendere plea "authorizes the court for purposes of the case to treat [the defendant] as if he were guilty." ***North Carolina v. Alford***, 400 U.S. 25, 35 (1970). "Implicit in the nolo contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." ***Id.*** at 36. Further, Arkansas state law treats nolo contendere pleas as convictions. ***Pryor v. State***, 861 S.W.2d 544, 547 (Ark. 1993) ("This court has consistently treated convictions based on *nolo contendere* pleas as convictions."). By pleading nolo contendere, Chambers was convicted of domestic battery.

Chambers argues his domestic battery offense was not "violent" because it lacked the requisite mens rea. The Arkansas domestic battery offense requires an act "with the *purpose* of causing physical injury" in subsections (a)(1) and (a)(2), but only an act that "*recklessly* causes serious physical injury" in subsection (a)(3). **Ark. Code Ann. § 5-26-304** (emphasis added). This court "review[s] de novo whether a previous conviction is a violent felony under the ACCA." ***United States v. Mallett***, 66 F.4th 734, 735 (8th Cir. 2023). An offense requiring a reckless mens rea does not qualify as violent under the ACCA. ***Borden v. United States***, 593 U.S. 420, 423 (2021). "When determining whether a state-law conviction qualifies as a violent felony under the ACCA, sentencing courts must look 'to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" ***United States v. Pate***, 754 F.3d 550, 554 (8th Cir. 2014), *quoting* ***Taylor v. United States***, 495 U.S. 575, 600 (1990). "[I]f the statute combines two offenses, crime (a) and crime (b), and only the elements of crime (a) make it a violent felony, then to use a prior conviction for enhancement . . . the government must prove that the defendant committed crime (a), not crime (b)." ***United States v. McCall***, 507 F.3d 670, 674 (8th Cir. 2007), *reh'g granted, opinion vacated*, 523 F.3d 902 (8th Cir. 2008) (mem.). This "'modified categorical approach' . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench

trial, and jury instructions and verdict forms." ***Johnson v. United States***, 559 U.S. 133, 144 (2010), *quoting* ***Nijhawan v. Holder***, 557 U.S. 29, 41 (2009) (cleaned up).

True, Chambers's charge does not identify which subsection—(a)(1), (2), or (3)—he violated. Still, according to the state plea hearing transcript, the court mirrored the statutory language requiring purpose: "The State alleges that on or about December 11, 2015, in Jefferson County, with the *purpose* of causing physical injury to a family or household member, you caused physical injury to [the victim]." (emphasis added). Without objecting, Chambers affirmed that he understood the charges against him and pled nolo contendere. Chambers was convicted of *purposeful* domestic battery, a violent crime and predicate offense under the ACCA.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____