# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1065
_____

United States of America

*Plaintiff - Appellee*

v.

Sam Sando

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: December 18, 2025
Filed: May 19, 2026
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

KELLY, Circuit Judge.

A federal jury convicted Sam Sando on several charges related to a shooting that occurred on January 9, 2022. Sando appeals, challenging several of the district court's[1] evidentiary rulings at trial. We affirm.

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

## I.

On January 7, 2022, Andrew Meyer sent a message to Sando offering to sell him marijuana. However, Meyer did not have any marijuana to sell. Instead, he planned to sell Sando "fake weed" and use the money to buy fentanyl. Sando and Meyer continued to message about the deal through the following day.

Then, early in the morning of January 9, Sando was involved in a domestic dispute with Asatu Abalo, the mother of their child. Sando went to Abalo's apartment and, at about 2:00 a.m., Abalo called 911 to report a domestic assault. Officer Rogelio Apolonio responded and, upon arrival, encountered a man—later identified as Sando—leaving the apartment building. Apolonio went to Abalo's apartment, where she told him that Sando had just left and described the clothes he was wearing, which matched the description of the man Apolonio had seen in the hallway. Abalo said Sando had held a gun at her head in the presence of their one-year-old son and had damaged the apartment. She described the gun as a black 9-millimeter handgun with an "Ethika" sticker and showed Apolonio a photo of Sando with the gun. Abalo also said that Sando told her, "Tomorrow, watch out. You'll hear gunfire."

Later in the afternoon that same day, Sando was with his cousin Salifou Sahr when he messaged Meyer to follow up on the marijuana deal. He explained he had been delayed due to "issues" with Abalo but was now ready to meet. Shortly after 8:00 p.m., Meyer, along with Trishay Thompson and Alena Williams, went to 1426 Pennsylvania Avenue—the address Sando provided.

Sando then messaged Meyer and asked to meet at 1428 Pennsylvania Avenue instead. Thompson drove Meyer and Williams to the new location and when they arrived, Meyer received another message from Sando, this time asking him to come inside the apartment and indicating that only Sando and his young son were home. Although reluctant, Meyer was about to go in, but Thompson warned him not to. Meyer then messaged Sando, asking him to come outside. Sando said to give him "a

second" and that he was coming. Minutes later, Sando and Sahr approached the car with guns drawn. Thompson started to drive away, but the two men fired and Thompson was shot in the neck. He later died from his injuries. Both 9-millimeter and .40-caliber casings were found on the ground near the car. Sando and Sahr were arrested a week later. On Sando's bed, law enforcement found several note cards, including one that read "Escape Plan."

Sando was charged with first degree murder in state court. In May 2023, he was acquitted after a jury trial. In March 2024, Sando was charged in federal court with (1) conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); (2) attempted interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); (3) attempted possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 846 and 18 U.S.C. § 2; and (4) carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A).

The case proceeded to trial, and the jury found Sando guilty on Counts 2, 3, and 4.[2] On appeal, Sando argues the district court erred in excluding from evidence Abalo's state court deposition and a portion of Williams's testimony from the state proceedings; limiting his ability to impeach a government witness; and admitting evidence of domestic violence involving Sando and Abalo on January 9. We review his challenges for an abuse of discretion, and we "will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." United States v. Allen, 43 F.4th 901, 909 (8th Cir. 2022) (quoting United States v. Yarrington, 634 F.3d 440, 447 (8th Cir. 2011)).

---

[2]Count 1 was dismissed before trial on the government's motion.

## II.

Abalo did not testify at the federal trial, but the district court admitted statements she made to Apolonio, including her description of the firearm and that Sando told her there would be "gunfire" the next day. Sando sought to introduce contrary statements Abalo made in her state court deposition—that she did not see Sando with a gun on January 9 and that she did not remember much of what she told the officers that night. The district court excluded the statements.

Sando argues that the district court erred because Abalo's prior deposition testimony was admissible under Federal Rule of Evidence 806.[3] See Allen, 43 F.4th at 909 ("Under Federal Rule of Evidence 806, when hearsay statements are admitted, a party may impeach the credibility of the person who made those statements 'by any evidence that would be admissible for [impeachment] purposes if the declarant had testified as a witness.'" (alteration in original) (quoting Fed. R. Evid. 806)).

Even assuming the evidence met the requirements of Rule 806, the admissibility of this evidence was nevertheless subject to Rule 403. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). After careful consideration, the district court found that it would be unfairly prejudicial to admit Abalo's deposition. If the deposition were admitted, the court explained, the government would be permitted to offer evidence to explain why Abalo may have given a contradictory version of events in her deposition. Such evidence would include not only the

---

[3]The district court also found the deposition was not admissible under Rule 807. Sando does not appeal that ruling—he challenges only its exclusion under Rule 806.

-4-

previously excluded bodycam footage in its entirety,[4] but also evidence that Sando had violated a no-contact order by making over 300 recorded telephone calls to Abalo from the local jail. The district court also made detailed findings that Abalo's deposition testimony lacked indicia of trustworthiness.[5] And it expressly stated that either party was free to call Abalo as a witness. Placed in context, we see no abuse of discretion in the district court's decision to exclude Abalo's deposition on the grounds that the prejudicial impact of its admission outweighed its limited probative value.

III.

Next, Sando challenges the district court's decision to exclude a prior statement made by Alena Williams. At trial, Sando sought to admit prior state court testimony from Williams to show that Meyer—not Sando—was the second shooter on the night of January 9, 2022.[6] At Sando's state trial, Williams testified that, after the shooting, Meyer sent her a message stating that "later on . . . he tried to get rid of a gun, that he burnt it or put it in the lake[.]" Sando offered this statement to support his assertion that Sahr shot at the car and Meyer shot back with his own gun—thus accounting for the two types of ammunition found at the scene and excluding Sando as a shooter. During an offer of proof, Meyer said he did not remember sending such a message to Williams and denied having a gun that day.

---

[4]In an earlier ruling, the district court allowed the government to play only the portion of Apolonio's bodycam footage depicting his brief encounter with Sando in the hallway. The full footage included Abalo describing prior violent encounters with Sando, showing Apolonio doors and walls she said Sando damaged, and pleading—at one point on her knees—for assistance from law enforcement.

[5]In her deposition, Abalo said she did not see Sando with a gun on January 9. But the district court noted that Abalo twice attempted to assert her Fifth Amendment privilege against self-incrimination; consistently said she could not remember what happened on January 9 or what she told Apolonio; and claimed that anything she said was due to her emotional state.

[6] No one disputed that Sahr was one of the two shooters.

Sando argues that Williams's prior testimony was admissible as a statement against interest—Meyer's interest—under Rules 804(b)(3) and 613(b). To admit a statement pursuant to Rule 804(b)(3): "(1) the declarant must be unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless he [] believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement." United States v. Alexander, 114 F.4th 967, 971–72 (8th Cir. 2024) (quoting United States v. Honken, 541 F.3d 1146, 1161 (8th Cir. 2008)); Fed. R. Evid. 804(b)(3).

The district court found Meyer was not "unavailable" for purposes of the Rule. Sando characterized Meyer as unavailable because he did not remember making the statement. See Fed. R. Evid. 804(a)(3) (A declarant is "unavailable" for purposes of Rule 804 if the declarant "testifies to not remembering the subject matter."). The court disagreed, finding that Meyer did not simply say he did not remember the statement, but also said he would not have made the statement. And apart from Williams's prior testimony, there was no evidence that he did.[7] Law enforcement found no such message on Williams's phone. And Sando offered nothing but hearsay—Williams's testimony about something Meyer said—to establish that Meyer made the statement. See Fed. R. Evid. 804(b)(3) (allowing admission of unavailable witness's statement against interest if it "is supported by corroborating circumstances that clearly indicate its trustworthiness"). We discern no abuse of discretion in the district court's evidentiary ruling.

For the first time on appeal, Sando also argues Williams's prior statement was not hearsay—and was therefore admissible—because it was "inconsistent with [her] testimony and was given under penalty of perjury at a trial." Fed. R. Evid.

---

[7]The district court permitted Sando to ask Meyer on cross examination whether he made the statement, but Sando would "have to take whatever his answer is." The court agreed that Meyer could be impeached with extrinsic evidence of the message itself but found there was no evidence the message existed. See Fed. R. Evid. 613(b).

801(d)(1)(A) ("A statement . . . is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement, and the statement is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." (citation modified)). Reviewing this argument for plain error, we find none. See United States v. Brown, 88 F.4th 750, 758 (8th Cir. 2023) (reviewing for plain error appellant's evidentiary challenge raised "for the first time on appeal" (citing United States v. Torrez, 925 F.3d 391, 395 (8th Cir. 2019))). As an initial matter, Sando overstates the inconsistency between Williams's testimony at his federal trial and her testimony in the state proceedings.[8] In any event, Williams's testimony about something that Meyer—or anyone else—told her is hearsay. See Fed. R. Evid. 801(c). Sando's only response is that Meyer's embedded statement about getting rid of a gun is nevertheless admissible pursuant to Rule 804(b)(3), but we have already concluded that the district court did not err in finding it was not. We see no plain error here.

IV.

Sando also contends that the district court erred in limiting his ability to impeach Detective Benjamin Carter, who interviewed Williams about the events of January 9.[9] On cross examination, Sando asked Carter whether Williams lied to him during the interview. Carter answered that he thought Williams "minimize[ed] . . . her knowledge of what occurred" because she had experienced "a traumatic incident," but otherwise thought she was "forthright [and] credible." Sando then asked, "So, there's never [] any point in which you say that she was lying to you?"

_____

[8]In state court, Williams said Meyer sent her a message about getting rid of a gun. At Sando's federal trial, Williams could not recall whether Meyer sent her a message or someone simply told her this information.

[9]We review this evidentiary challenge for an abuse of discretion. See United States v. Stewart, 32 F.4th 691, 694 & n.4 (8th Cir. 2022) (reviewing challenge to scope of cross-examination under abuse of discretion instead of de novo because a confrontation clause challenge was not raised).

The district court sustained the government's hearsay objection and did not permit Carter to answer.

Sando later made an offer of proof outside the presence of the jury to flesh out his objection. Sando explained that, in a recording of Carter's interview with Williams, "Carter says . . . to Williams she was not just holding back, she was lying to him." Sando intended to impeach Carter with this prior inconsistent statement. The district court declined to reconsider its ruling, finding that Sando could not use what the court considered to be a law enforcement interview technique for impeachment purposes.

Carter's contemporaneous characterization of Williams's truthfulness at the interview differed from his characterization of the same at trial. Perhaps Carter considered it an interview technique, perhaps not. Either way, if asked about the arguable inconsistency between the two statements, Carter would have the opportunity to explain it to the jury. And the jury could consider that explanation just as it considers any other testimony in assessing the credibility and veracity of a witness. See United States v. Chambers, 133 F.4th 812, 816 (8th Cir. 2025) ("It is within the province of the jury to make credibility assessments and resolve conflicting testimony." (citation omitted)). We see no reason on the record to limit Sando's ability to impeach Carter with his prior inconsistent statement. Cf. United States v. Campbell, 986 F.3d 782, 794 (8th Cir. 2021) (recognizing reasonable limits on cross examination could be based on factors such as harassment, prejudice, or confusion of the issues) (citation omitted).

Turning to whether the error was harmless, Sando asserts that Williams's credibility was key to his defense. Williams testified that Meyer did not get out of the car until after the shots were fired. If credited, her testimony would eliminate Meyer as the second shooter. According to Sando, his proposed question to Carter would have impeached the credibility of both Carter and Williams, in turn bolstering his assertion that it was Meyer, not Sando, who was the second shooter.

But the jury also heard evidence directly from Meyer that he was in the car when shots were fired. Meyer said he ducked before reaching over to apply the brakes when Thompson—the driver—was struck. When shown security camera footage, Meyer also said he "remember[ed] . . . doing that stuff" depicted, including getting out of the car and running around to the driver's side to check on Thompson. Meyer's testimony corroborated Williams's testimony that both Meyer and Thompson were in the car when shots were fired and that Meyer only got out when the car stopped moving. The jury also heard testimony that there was fragmented glass on the ground outside the driver and passenger doors. A law enforcement officer explained that because car windows are made of safety glass, the windows would not have shattered until the car doors were opened and then closed again, providing further support for the finding that Meyer remained in the car until after the shots were fired. On this record, Sando's inability to impeach Carter with a single inconsistent statement had no "more than a slight influence on the verdict." Allen, 43 F.4th at 909 (quoting Yarrington, 634 F.3d at 447); see also United States v. May, 131 F.4th 633, 642 (8th Cir. 2025) ("We 'will reverse a district court's limitation of cross-examination only where there has been a clear abuse of discretion and a showing of prejudice to the defendant.'" (quoting United States v. Alston, 626 F.3d 397, 403 (8th Cir. 2010))).

## V.

Lastly, Sando asserts the district court erred when it admitted, under Rule 404(b), evidence of "allegations of domestic assault" between Sando and Abalo on January 9. However, the district court found this evidence was admissible as intrinsic to the charged offenses, and Sando does not challenge that ruling on appeal, giving us no reason to disturb it.

## VI.

We affirm.

_____